# IN THE SUPREME COURT OF TEXAS

══════════

No. 15-0921

══════════

UNITED SCAFFOLDING, INC., PETITIONER,

v.

JAMES LEVINE, RESPONDENT

══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

══════════════════════════════════════════════════════

**Argued March 2, 2017**

JUSTICE GREEN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE JOHNSON, JUSTICE WILLETT, JUSTICE GUZMAN, and JUSTICE BROWN joined.

JUSTICE BOYD filed a dissenting opinion, in which JUSTICE LEHRMANN and JUSTICE DEVINE joined.

In this slip-and-fall case, we are presented with two challenges to a trial court judgment rendered against a scaffolding contractor. First, the contractor challenges the jury submission of the plaintiff's claim under a general-negligence theory of recovery, arguing that the plaintiff brought a claim for premises liability, which necessarily fails because the plaintiff did not request and obtain findings on the elements of that claim. We hold that the plaintiff's claim against the contractor sounds in premises liability, and a general-negligence submission cannot support the plaintiff's recovery in a premises liability case. Second, the contractor challenges the trial court's order

granting a new trial, arguing that the new trial order can be reviewed by direct appeal after final judgment was rendered in the subsequent trial. While the contractor presents an interesting issue, we do not reach it because our ruling on the submission issue is dispositive in the contractor's favor. We reverse the court of appeals' judgment and render a take-nothing judgment.

## I. Background and Procedural History

On December 26, 2005, James Levine, a pipefitter for Valero Energy Corporation and an employee at Valero's Port Arthur refinery, was scheduled to work an overtime shift in the refinery's alkylation unit. Because it was an overtime shift, Levine did not work with his usual crew, but each member of the overtime crew was a Valero employee. The overtime crew was tasked with routine maintenance that required the installation of two blanks into an exchanger, a dangerous job that placed Levine and other crew members more than fifteen feet above the ground on a scaffold, where they donned protective clothing and were supplied "fresh air" through special equipment that was constantly monitored by a crew member. Levine alleges that he slipped on a piece of plywood that had not been nailed down, causing him to fall up to his arms through a hole in the scaffold. Levine alleges that he suffered a neck injury as a result of the fall.

The scaffold on which Levine allegedly fell was constructed by United Scaffolding, Inc. (USI), a contractor Valero hired to build scaffolds at its Port Arthur refinery. According to both USI's and Valero's scaffold policies, and in compliance with Occupational Safety and Health Administration (OSHA) regulations, USI was required to inspect the nearly three thousand scaffolds at the refinery before each work shift and before each scaffold's use. It is undisputed that USI assembled the scaffold at issue approximately one week before the maintenance work commenced,

2

and it is undisputed that USI representatives were not present on the date of, and at least three days preceding, Levine's fall.

Levine filed suit against USI, claiming that USI improperly constructed the scaffold and failed to remedy or warn of the dangerous condition on the scaffold, causing his injury. The case was tried before a jury for the first time in December 2008. The trial court submitted a general-negligence question to the jury, offered by USI, and the jury returned a verdict finding USI negligent. The jury apportioned responsibility among the parties, assigning 51% to USI and 49% to Levine. The jury awarded Levine $178,000 in damages for future medical expenses, but it declined to award any damages for past medical expenses, past or future pain and suffering, mental anguish, or loss of earning capacity.

Levine filed a motion for new trial, asserting that the jury's verdict was against the great weight and preponderance of the evidence. The trial court agreed and granted a new trial "in the interest of justice and fairness." *In re United Scaffolding, Inc.*, 301 S.W.3d 661, 662 (Tex. 2010) (per curiam) (orig. proceeding). Asserting that the trial court abused its discretion by ordering the new trial, USI filed a petition for writ of mandamus in the Ninth Court of Appeals, which denied relief. *In re United Scaffolding, Inc.*, 287 S.W.3d 274, 275 (Tex. App.—Beaumont 2009, orig. proceeding), *mand. granted*, 301 S.W.3d at 663. USI then filed a petition for writ of mandamus in this Court, and we conditionally granted the writ, directing the trial court to "specify its reasons for disregarding the jury verdict and ordering a new trial." *In re United Scaffolding*, 301 S.W.3d at 663. The trial court subsequently amended its order, but USI again sought mandamus relief, which the court of appeals again denied. *In re United Scaffolding, Inc.*, 315 S.W.3d 246, 251 (Tex.

3

App.—Beaumont 2010, orig. proceeding), *mand. granted*, 377 S.W.3d 685, 690 (Tex. 2012). USI then filed a second petition for writ of mandamus in this Court, alleging that the trial court did not fully comply with our instruction from the first mandamus proceeding. *In re United Scaffolding, Inc.*, 377 S.W.3d at 686–87. We conditionally granted the writ and directed the trial court to "resolve all ambiguity" by amending the new trial order to include "only the specific and valid reasons that, in the context of this case, . . . it granted a new trial." *Id.* at 690. The trial court amended its order, and USI did not file a third petition for writ of mandamus.

The case was tried for a second time in February 2014. Just as it did in the first trial, the trial court submitted a general-negligence question to the jury, and USI neither offered a premises liability question nor objected to the general-negligence question. At the conclusion of the second trial, Levine faired much better. In addition to allocating 100% of the responsibility to USI, the jury awarded Levine nearly $2 million in past and future damages. USI filed a motion for new trial and a motion for judgment notwithstanding the verdict. In its motion for judgment notwithstanding the verdict, USI raised the argument, for the first time, that the trial court improperly submitted a general-negligence question to the jury when Levine's claim sounded in premises liability. Levine cited our decision in *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523 (Tex. 1997), asserting that submission of the improper theory of recovery required the trial court to render a take-nothing judgment. The trial court denied both motions and entered judgment in Levine's favor.

USI raised two issues on appeal: (1) whether Levine's claim was improperly submitted under a general-negligence theory of recovery; and (2) whether the new trial order following the first trial was improperly granted. The court of appeals affirmed the trial court's judgment. ___ S.W.3d ___,

4

___ (Tex. App.—Corpus Christi–Edinburg 2015, pet. granted). As to the first issue, the court of appeals concluded that the relevant inquiry for determining the proper characterization of Levine's claim hinged on whether USI controlled the premises, which the court held that USI did not. *Id.* at ___. Declining to reach the second issue, the court of appeals held that although several of our recent decisions could be characterized as expanding the scope of appellate review of new trial orders via mandamus, those holdings do not permit the direct appeal of a new trial order following the completion of the new trial. *Id.* at ___.

## II. Character and Submission of Levine's Claim

In its first issue, USI contends that it is entitled to a take-nothing judgment because Levine's premises liability claim was improperly submitted to the jury under a general-negligence theory of recovery. Levine argues that his claim was properly submitted and, even if his claim sounded in premises liability, USI waived its argument either by not objecting to the jury charge or by inviting the error when it requested a general-negligence question in the first trial. As we explain below, both Levine's trial court petition and the evidence presented at trial compel the conclusion that Levine's claim is premised on USI's having the right to control the scaffold at the time Levine allegedly suffered injury. We hold that Levine's claim sounds in premises liability, and, as a result, the general-negligence findings cannot support Levine's recovery. Additionally, we hold that USI neither waived its submission argument nor invited error and that USI properly preserved error by raising its argument in its motion for judgment notwithstanding the verdict.

5

## A. Standard of Review

A trial court must submit jury questions, instructions, and definitions that "are raised by the written pleadings and the evidence." TEX. R. CIV. P. 278; *see also Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663 (Tex. 1999). In reviewing alleged error in a jury submission, we consider "the pleadings of the parties and the nature of the case, the evidence presented at trial, and the charge in its entirety." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009) (citing *Sterling Tr. Co. v. Adderley*, 168 S.W.3d 835, 843 (Tex. 2005); *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986)). The alleged charge error "will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment." *Island Recreational*, 710 S.W.2d at 555; *see also Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995).

Whether the condition that allegedly caused the plaintiff's injury is a premises defect is a legal question, which we review de novo. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385 (Tex. 2016); *Reliance Nat'l Indem. Co. v. Advance'd Temps., Inc.*, 227 S.W.3d 46, 50 (Tex. 2007); *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 866 (Tex. 2002) (per curiam); *State v. Burris*, 877 S.W.2d 298, 299 (Tex. 1994) (per curiam); *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992). As we have held for two decades, a premises defect case improperly submitted to the jury under only a general-negligence question, without the elements of premises

6

liability as instructions or definitions, causes the rendition of an improper judgment.[1]  *Olivo*, 952

S.W.2d at 529.

## B. Character of Levine's Claim

"A general contractor in control of the premises may be liable for two types of negligence

in failing to keep the premises safe: that arising from an activity on the premises, and that arising

from a premises defect."  *Id.* at 527 (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.

1985)).  Levine argues on appeal that neither of those types of negligence applies in this case because

USI relinquished control of the scaffold before Levine was injured, leaving Levine with a general-

---

[1] The dissent suggests that we apply the improper standard of review because we do not review the legal question of the character of Levine's claim under some sort of sufficiency-of-the-evidence standard. ___ S.W.3d at ___ (Boyd, J., dissenting).  *But see Reliance Nat'l*, 227 S.W.3d at 50 ("Appellate courts review legal determinations de novo, whereas factual determinations receive more deferential review based on the sufficiency of the evidence.").  Disregarding controlling law and relying on inapplicable cases, the dissent argues that because USI did not specifically challenge the validity of Levine's general-negligence legal theory, we must affirm the trial court's judgment unless USI conclusively established that there is "no evidence" to support the general-negligence submission.  *Id.* at ___.  The dissent ignores this inconsistency and instead misstates our holding in *Olivo* in an effort to avoid its clear application to our review in this case.  *Id.* at ___.  The dissent claims that our standard of review would be appropriate only if a premises liability instruction had been given.  *Id.* at ___.  But that ignores *Olivo*, in which the jury was given no premises liability instructions or definitions, and we considered whether the pleadings and evidence supported the plaintiff's recovery.  *See Olivo*, 952 S.W.2d at 529.  Although the jury in *Olivo* found liability under a general-negligence theory, our analysis did not consider whether "any allegations and evidence support" general negligence, as the dissent would have us do here.  ___ S.W.3d at ___; *Olivo*, 952 S.W.2d at 528–29.  Instead, we considered the character of the plaintiff's claim by first determining the source of the plaintiff's alleged injury—premises defect—and then determining the duties owed, concluding that the general contractor defendant owed the plaintiff premises duties if it retained a right to control the work that created the dangerous condition.  *Olivo*, 952 S.W.2d at 528–29.  Recognizing that "premises defect cases and negligent activity cases are based on independent theories of recovery" and that "[w]e have explicitly required that the trial court submit the *Corbin* elements in a premises defect case," we held that "[b]ecause the Olivos did not obtain a jury finding that included essential elements of their premises defect claim, they cannot recover."  *Id.* at 529 (citing TEX. R. CIV. P. 279).  Although the case before us today involves the question of control over the *premises* rather than control over defect-producing work, *Olivo* guides our review of the alleged charge error.  We reject the dissent's veiled and disjointed effort to overrule *Olivo* by suggesting that a premises liability claim submitted as a general-negligence question without instructions as to traditional premises liability elements is proper so long as any allegation and evidence can be found in the record to support a general-negligence claim.  As premises liability is a "branch of negligence law," *Occidental Chemical Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016), the dissent's new rule would effectively eliminate premises liability submissions altogether.  Finally, we reject the dissent's implication that premises liability is simply an affirmative defense, requiring the defendant to bear the burden of ensuring submission of the proper theory of recovery to support a premises liability judgment in the plaintiff's favor.  *See infra*, Part III.

7

negligence claim. The court of appeals considered USI's control over the premises to be the central inquiry in determining the character of Levine's claim. ___ S.W.3d at ___. Concluding that Valero controlled the scaffold on the day of Levine's accident, the court of appeals held that Levine's claim was properly submitted under a general-negligence theory of recovery. *Id.* at ___. In reviewing the alleged charge error, we must consider the nature and circumstances of Levine's injury, Levine's allegations against USI, and the evidence presented at trial.

## 1. Theories of Recovery

> [A] person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner. When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply.

*Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016) (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992)). Negligence and premises liability claims thus are separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775–76 (Tex. 2010); *Keetch*, 845 S.W.2d at 264. Because negligence and premises liability claims are based on independent theories of recovery, we have held that they are not interchangeable. *See Occidental*, 478 S.W.3d at 644 (noting that premises liability "is itself a branch of negligence law" with different elements defining a property owner or occupier's duty of care); *Olivo*, 952 S.W.2d at 529.

Negligent-activity and premises liability claims "involve closely related but distinct duty analyses." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). In a negligent-activity case,

8

a property owner or occupier must "do what a person of ordinary prudence in the same or similar circumstances would have . . . done," whereas a property owner or occupier in a premises liability case must "use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier [of land] knows about or in the exercise of ordinary care should know about." *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998) (alteration in original) (citations and internal quotation marks omitted); *see also TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009) ("[A] premises owner or occupier must either adequately warn of the dangerous condition or make the condition reasonably safe."). Underpinning the distinctions between these claims is the principle that "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago*, 307 S.W.3d at 776 (footnotes omitted). Generally, a plaintiff need only submit a general-negligence question in support of its claim for a defendant's liability under a negligent-activity theory. *State v. San Miguel*, 981 S.W.2d 342, 347–48 (Tex. App.—Houston [14th Dist.] 1998) (citing *Keetch*, 845 S.W.2d at 264), *rev'd on other grounds sub nom. State v. Miguel*, 2 S.W.3d 249 (Tex. 1999). For a premises liability defendant to be liable for a plaintiff's injury, however, we held in *Corbin v. Safeway Stores, Inc.*, that a plaintiff must prove:

> (1) that [the defendant] had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to [the plaintiff]; (3) that [the defendant] did not exercise reasonable care to reduce or to eliminate the risk; and (4) that [the defendant's] failure to use such care proximately caused [the plaintiff's] personal injuries.

9

648 S.W.2d 292, 296 (Tex. 1983). Consequently, when submitting a premises liability cause of action to a jury, "a simple negligence question, unaccompanied by the *Corbin* elements as instructions or definitions, cannot support a recovery in a premises defect case." *Olivo*, 952 S.W.2d at 529 (citing *Keetch*, 845 S.W.2d at 266–67; *Warner*, 845 S.W.2d at 259–60).

## 2. The Source of Levine's Injury

Understanding the general principles that distinguish negligent-activity from premises liability claims, we next turn to whether Levine's alleged injury resulted from a contemporaneous negligent activity or a condition on the property. *See Sampson*, 500 S.W.3d at 388 ("When distinguishing between a negligent activity and a premises defect, this Court has focused on whether the injury occurred by or as a contemporaneous result of the activity itself—a negligent activity—or rather by a condition created by the activity—a premises defect." (citing *Keetch*, 845 S.W.2d at 264)). "A condition poses an unreasonable risk of harm for premises-defect purposes when there is a 'sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (quoting *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)). We have recognized that "slip/trip-and-fall cases have consistently been treated as premises defect causes of action." *Sampson*, S.W.3d at 391. In such cases, the plaintiff alleges injury as a result of a physical condition or defect left on the premises, "not as a contemporaneous result of someone's negligence." *Olivo*, 952 S.W.2d at 527 (citing *Keetch*, 845 S.W.2d at 264; *Warner*, 845 S.W.2d at 259); *see Sampson*, 500 S.W.3d at 390–91. Although we have acknowledged that at some point, almost every "artificial condition upon which a premises liability claim is based may be created by

10

an activity," we have declined to completely eliminate the distinction between premises conditions and negligent activities. *See Sampson*, 500 S.W.3d at 388; *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *Keetch*, 845 S.W.2d at 264. We again decline to do so here.

In this case, Levine alleged that he was injured when he fell through a hole in the USI-constructed scaffold after a piece of plywood that was not nailed down slipped from under him. Levine has never alleged that any sort of contemporaneous, ongoing activity caused his injury. Rather, in his trial court petition, Levine alleged that USI created a dangerous condition by "improperly assembling, erecting, and/or securing the scaffolding." Levine further alleged, among other things, that USI failed to "adequately determine dangerous conditions created," "correct the dangerous condition which existed with the scaffolding," "secure the scaffolding in a proper and safe work condition," and warn "that a dangerous condition existed which required extra care to be taken" by Levine while working on the scaffold. In essence, Levine claims that his injury resulted from a physical condition USI created and then left on the premises. We have repeatedly characterized such slip-and-fall claims as premises defect cases because the injuries were alleged to have resulted from physical conditions on property. *E.g.*, *Olivo*, 952 S.W.2d at 526–27 (holding that a slip-and-fall plaintiff who alleged injury resulting from drill pipe thread protectors that had been left on the ground, and not as a contemporaneous result of someone's negligence, had brought a premises defect case); *Keetch*, 845 S.W.2d at 264 (holding that although a slip-and-fall plaintiff alleged injury as a result of grocery store plant spraying, no ongoing activity was occurring when the plaintiff was injured and the claim was properly submitted as premises liability); *Warner*, 845 S.W.2d at 259 (holding that a slip-and-fall plaintiff alleged only a premises liability claim where "it [was]

11

undisputed that she was injured by a condition of the premises—a puddle of water, chicken blood, and other fluids that had accumulated on the floor—rather than a negligently conducted activity"). We see no reason to depart from that conclusion here, where the only fair reading of Levine's allegations is that his injury resulted from a physical condition left on the property—a hole in the scaffold platform, covered by an unsecured sheet of plywood—and not some contemporaneous activity. Therefore, on the question of whether Levine's claim arises from a contemporaneous negligent activity or a condition on the property, we hold that Levine's alleged injury arose from a premises defect.

We next consider the court of appeals' conclusion that Levine's claim was nevertheless properly submitted under a general-negligence theory of recovery because "USI did not have a level of control sufficient to establish a premises defect claim." ___ S.W.3d at ___.

### 3. USI's Duty to Levine

We begin with the question of whether any duty of care USI owed Levine as to the scaffold condition is derived from our premises defect body of law, as USI contends. Levine argues on appeal that no premises liability claim exists because USI, a contractor, did not own, physically possess, or control the premises and therefore owed Levine no duty under a premises liability theory; rather, USI was hired to assemble the scaffold and did so negligently, making this purely a negligence case. Whether a duty exists is a question of law for the court, and the presence of an unreasonably dangerous condition weighs in favor of recognizing a duty. *Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 425 (Tex. 2011) (citing *Del Lago*, 307 S.W.3d at 767); *cf. Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991) ("[I]n some instances [a court] may

12

require the resolution of disputed facts or inferences which are inappropriate for legal resolution." (citing *Mitchell v. Mo.–Kan.–Tex. R.R. Co.*, 786 S.W.2d 659, 662 (Tex.), *cert denied*, 498 U.S. 896 (1990))). We begin with a discussion of the premises duties an owner or occupier of land owes and when a contractor might assume those same duties.

### a. Status of Parties

Generally, an owner or occupier of property has a duty to keep the premises under its control in a safe condition. *Redinger*, 689 S.W.2d at 417 (citing *Smith v. Henger*, 226 S.W.2d 425 (Tex. 1950)). However, an owner or occupier "is not an insurer of [a] visitor's safety." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015) (alteration in original) (quoting *Del Lago*, 307 S.W.3d at 769). "[A] premises-liability defendant may be held liable for a dangerous condition on the property if it assumed control over and responsibility for the premises, even if it did not own or physically occupy the property." *Cty. of Cameron*, 80 S.W.3d at 556 (internal quotations and alterations omitted) (citing *Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999) (per curiam); *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986)). Moreover, a premises liability defendant may be subject to liability if it has a right to control the premises, which "may be expressed by contract or implied by conduct." *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex. 2008) (citations omitted). Accordingly, physical possession does not equate to the right to control the premises; one can exist without the other. *See Butcher v. Scott*, 906 S.W.2d 14, 15–16 (Tex. 1995) (per curiam).

An owner or occupier generally does not have a duty to ensure that a general contractor performs work in a safe manner. *Redinger*, 689 S.W.2d at 418. Essentially, a general contractor that

assumes control of or retains the right to control the premises "is charged with the same duty as an owner or occupier." *Olivo*, 952 S.W.2d at 527 (citing *Redinger*, 689 S.W.2d at 417). Thus, the duty to make the premises safe or warn of dangerous conditions "generally runs with the ownership or control of the property," and a defendant's liability under a premises liability theory rests on the defendant's assumption of control of the premises and responsibility for dangerous conditions on it. *Occidental*, 478 S.W.3d at 644; *see Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 265 (Tex. 2014) (per curiam) (noting that a premises liability plaintiff must prove the defendant's ownership or control).

In premises liability cases, we have held that "the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred." *Urena*, 162 S.W.3d at 550 (citing *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675 (Tex. 2004); *Corbin*, 648 S.W.2d at 295–96). After all, premises liability is a form of negligence, and "[i]n all negligence actions, the foreseeability of the harmful consequences resulting from the particular conduct is the underlying basis for liability." *Corbin*, 648 S.W.2d at 296. Here, no party disputes that Levine, a Valero pipefitter using a USI-constructed scaffold at the Valero plant, is an invitee. *See Austin*, 465 S.W.3d at 202 ("An invitee is one who enters the property of another with the owner's knowledge and for the mutual benefit of both. Employees working at their employers' premises fit this description . . . ." (internal quotations and citations omitted)). Therefore, the duty owed to Levine as an invitee would be "to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Id.* at 203 (citations omitted); *see Olivo*, 952 S.W.2d at 527. This duty is imposed on owners, occupiers, or persons in control of the premises

because they are "typically in a better position than the invitee to be aware of hidden hazards on the premises." *Austin*, 465 S.W.3d at 203.

Neither party disputes that USI, a third-party company Valero hired to install, inspect, modify, and dismantle scaffolding at its Port Arthur Refinery, is a general contractor. As a general contractor, USI thus may be subject to liability for breaching any duties that a property owner would owe to business invitees. *Redinger*, 689 S.W.2d at 417. In evaluating whether a general contractor owes an invitee a duty of care as to the property condition, the "relevant inquiry is whether the [contractor] assumed sufficient control over the part of the premises that presented the alleged danger so that the [contractor] had the responsibility to remedy it." *Cty. of Cameron*, 80 S.W.3d at 556. Thus, whether USI owed Levine a premises duty must be determined by examining whether USI maintained a right to control the scaffold that allegedly caused Levine's injury. *See id*.; *Moritz*, 257 S.W.3d at 214.

### b. Control

We next review Levine's pleadings and the evidence presented at trial to determine whether Levine's claim relies on USI's right to control the scaffold or on USI's having relinquished control of the scaffold.

Levine's trial court petition asserts allegations inconsistent with the position he now takes on appeal—that USI lacked control of the premises at the time of his injury. In his petition, Levine alleged that he was injured "while working on a scaffolding which had been erected/constructed/supervised /built by [USI]" and that USI "had direction, control and supervision over the erection/building of the scaffolding." In addition to alleging that USI created and then failed

15

to remedy, or warn about, a dangerous condition on the scaffold, Levine's pleadings further allege USI's responsibility for the scaffold by claiming that USI failed to provide him and others "sufficient training and instruction . . . on the proper erection and use of the scaffolding," failed "to adequately inspect the scaffolding," failed "to maintain the scaffolding in a proper and safe work condition," failed "to provide . . . a safe working environment," failed "to enforce proper safety codes, rules, standards and practices," failed "to instruct," failed "to properly supervise," and failed "to ensure the safety of the workers attempting to use the scaffolding." Under each of these nonfeasance allegations, USI could not be liable unless it had the right to control the scaffold.

Levine does not explain how, absent control, USI could have the duty to train, instruct, inspect, supervise, maintain, or ensure the safety of workers charged with using the USI-constructed scaffold. Instead, Levine now argues that USI's trial defense—that USI was not present on the Valero work site at the time of Levine's accident and that Valero did not notify USI of its intent to use the scaffold, which would have triggered USI's inspection of the scaffold to ensure its safety before the shift began—constitutes an admission by USI that it did not control the scaffold. But USI's argument does not create a dispute over Levine's assertion of USI's control; in fact, USI argues quite clearly that it controlled and was responsible for the scaffold.[2] Levine confuses USI's presence at the work site, or occupancy, with control over the scaffold. The relevant inquiry in this

---

[2] We note that Levine alleges inconsistency between USI's argument on appeal—that USI retained control over the scaffold that allegedly resulted in Levine's injury—and USI's argument at trial—that USI was not responsible for Levine's injury that allegedly resulted from the scaffold's condition. As an example, Levine points to testimony from USI Site Safety Coordinator, Kenneth Broussard, who testified that if Valero inspected the scaffold, then Valero assumed responsibility for the scaffold. That testimony does not indicate that USI lacked control. Rather, it simply represents one lay witness's opinion that responsibility for the scaffold belonged to whichever party conducted the inspection. Ultimately, however, USI's trial argument that Valero did not notify USI of its intent to use the scaffold prior to Levine's accident, thus relieving USI of liability, speaks to the element of breach, not duty.

16

instance is not whether USI's employees were present at the work site, which is not in dispute, but whether USI retained a sufficient right of control over the work site's scaffold such that it had the responsibility to remedy the condition that Levine alleges caused his injury. *See Cty. of Cameron*, 80 S.W.3d at 556. The only fair reading of Levine's pleadings requires the determination that Levine did in fact allege that USI assumed and retained the right to control the scaffolding it constructed, giving rise to a duty to make and keep the premises safe for business invitees, and that USI allegedly breached its duty to warn of the dangerous condition on the scaffold or make it safe, proximately causing Levine's injury.

The evidence presented at trial is consistent with our reading of Levine's pleadings. The scaffold erected in the alkylation unit was built by USI nearly a week before Valero's intended use. It was assembled solely for the job assigned to the overtime crew, and it was just one of many scaffolds constructed pursuant to the ongoing contractual relationship between USI and Valero, which resulted in the daily use of approximately 3,000 USI-constructed scaffolds at the Port Arthur refinery (at a rate of an estimated sixty to eighty USI-constructed scaffolds erected daily). Although the contract between USI and Valero is not included in the record, documents presented and testimony elicited at trial demonstrate that USI and Valero maintained separate scaffold policies, each intended to conform with federal law and OSHA regulations. The USI and Valero policies mandate strict adherence to a scaffold tagging procedure that requires an OSHA "competent person" to inspect each scaffold before each work shift and before each use.[3] According to Valero, the

---

[3] OSHA defines a "competent person" as "one who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them." 29 C.F.R. § 1926.450(b) (2016).

17

purpose of the tagging procedure is to "ensure that all scaffolds being erected and all work performed from scaffolds is being done in a safe and uniform manner." Although USI maintains its own tagging system, its policy is to conform to its clients' procedure so long as that policy does not violate OSHA regulations.

Under Valero's scaffolds policy, located within its General Guidelines for Contractor Safety, Valero mandates that, among other things, "CONTRACTORS shall ensure that all *users* of scaffolds have been trained in the proper use of and the hazards associated with scaffolds prior to allowing employee access to any scaffold." Additionally, the policy mandates that "CONTRACTORS shall ensure each scaffold is inpected prior to each work shift before allowing AFFECTED EMPLOYEES to begin work." Finally, "CONTRACTORS shall only allow employee access to scaffolds that are properly constructed, inspected, and tagged." Thus, Valero places upon USI, Valero's "CONTRACTOR," sole authority to authorize Valero employees to use scaffolds USI has constructed.[4] Trial testimony from Valero and USI employees establishes that, on the date of Levine's alleged injury, these policies were in place and observed by both Valero and USI. Tony

_____

[4] The dissent correctly references trial testimony that Valero had "competent persons" on site who could inspect scaffolds, but the dissent makes an inferential leap when it suggests that this testimony proves USI lacked control. ___ S.W.3d at ___. The dissent simply ignores the Valero policy that grants USI the sole authority to give Valero employees access to scaffolds that USI has constructed. The fact that Valero may have employed "competent persons" qualified to inspect scaffolding does not mean that anyone other than USI ever did inspect scaffolding. The only evidence that *anyone* inspected the scaffold upon which Levine allegedly suffered injury on the date of the accident was Levine's own testimony—the same testimony in which Levine confirmed that without an updated inspection, he should not have worked on the scaffold. Even if someone other than a USI "competent person" inspected the scaffold, the record evidence indicates that this inspection would have violated Valero's policy. We cannot interpret the trial testimony to mean anything more than what OSHA says—only a "competent person" "is capable of" inspecting scaffolds. *See* 29 C.F.R. § 1926.450(b). The record evidence establishes that Valero hired USI to build and inspect scaffolding, and the scaffold policies combined with the trial testimony support that USI did just that. It could be true that, on the day of the accident, some mystery, OSHA-qualified Valero "competent person" secretly inspected the scaffold and updated the tag that Levine claims authorized his use of the scaffold, but even that would not negate USI's subsequent right to control the scaffold.

18

Lawrence, Valero's maintenance supervisor who supervised the overtime crew on the day of Levine's accident, confirmed that he or someone else in the maintenance department would have contacted USI to communicate the need for USI to construct a scaffold for the overtime crew to perform its work in the alkylation unit. Lawrence's testimony confirmed that the scaffold was constructed by USI and remained unused for nearly a week before the overtime crew began its work. Lawrence also testified that although Valero employed carpenters that were qualified as competent persons under OSHA regulations, they were not contacted or used to inspect the scaffold upon which Levine allegedly suffered injury. Although Lawrence was unsure as to whether Valero and OSHA required scaffold inspections before each use at the time of Levine's alleged injury, he testified that such a rule would have required USI to inspect the scaffold before its use by the overtime crew. Additionally, he testified that USI was not contacted because its representatives were not present at the work site. Lawrence testified that Valero's typical practice was to use some form of electronic communication to notify USI on a daily basis as to which scaffolds would be used and where new scaffolds needed to be constructed. Indeed, Valero would even contact USI the day before scheduled work that would require use of a particular scaffold so that USI could inspect the scaffold and update the scaffold's tag. Lawrence testified that this process was in place to allow USI to ensure the scaffold's safety and confirm that no one else had altered the scaffold post-construction. Further, and in line with Valero's scaffolds policy, Lawrence testified that Valero would contact USI to have them dismantle the scaffold once the necessary work was complete.

The dissent confuses the issue by suggesting that Valero would call and "request" inspections from USI only sometimes, when it needed them. ___ S.W.3d at ___. The record simply does not

19

support this conclusion. In reality, Valero would notify USI *whenever Valero wanted to use a scaffold*, which would prompt USI to inspect as required by both OSHA guidelines and the USI and Valero scaffold policies. Valero would communicate each plan to use a scaffold because Valero employees *could not use* any USI-constructed scaffold without USI's permission, which was given via an updated tag following an inspection. Thus, Valero effectively delegated to USI the authority to ensure its employees' safety on the scaffolds USI constructs.

Throughout trial, several witnesses confirmed Lawrence's testimony. Maximo Cardenas, another Valero pipefitter who worked with Levine on the scaffold at the time of the accident, testified that the purpose of inspecting scaffolding before each shift is "locating things that need to be corrected." Charles Green, a Valero boilermaker, testified that each time modifications needed to be made to the scaffolding, USI would make them so that he and other workers could work comfortably. Additionally, Green testified that a Valero supervisor would contact USI "first thing in the morning" to inspect scaffolding or would contact USI whenever revisions to the scaffolding needed to be done. Kenneth Broussard, USI's Site Safety Coordinator, and Bob Travis, a USI superintendent, do not dispute this testimony. Broussard testified, among other things, that USI inspects thousands of scaffolds daily at the Valero facility. Travis also testified that USI inspects the scaffolds it constructs "[e]very day prior to [Valero employees] going to work on [them]." After Valero employees start working on the scaffolding, they can call USI back to reinspect, when necessary. By his own testimony, Levine confirmed that he was aware of Valero's policy regarding scaffold use, that he was not allowed to use any scaffold unless it was inspected, that he believed the

20

scaffold on which he was allegedly injured had been inspected, and that when he was a Valero supervisor he could have called USI if he needed "revisions or something on [the] scaffolding."

Consistent with Levine's allegations, the evidence presented at trial reflects USI's right to control the scaffolding it constructed. No Valero employee was authorized to construct, use, or dismantle a scaffold without first securing USI's permission. The fact that, practically speaking, USI did none of these without first receiving a work order notifying USI of Valero's scheduled use of a particular scaffold does not mean that USI lacked the right to control that particular scaffold; after all, no general contractor can do the work it was hired to do without the property owner's instructions and access.[5] The fact that USI employees were not present on the premises after assembling the scaffold and before Valero notified USI of its scheduled, intended use—which would trigger USI's inspection to ensure the scaffold's safety before its use—does not mean that USI relinquished the right to control the scaffold in the interim. Rather, it simply means that USI had no reason to exercise its right to control the scaffold during that time.[6] The fact that Valero placed a

---

[5] The dissent claims that USI did not have access to the scaffolding because it had to secure "work orders and permits" from Valero. ___ S.W.3d at ___. Yet the dissent ignores Levine's testimony and the testimony of other Valero employees that they, too, had to secure permits to work on the Valero refinery job site and had to turn in permits at the end of their work shift. To suggest that USI relinquished control of the premises because Valero places restrictions on property access or maintains safety guidelines for all who work on the premises—all of which we can only assume, based on the record before us, were in place when Valero contracted with USI—is to suggest that USI could never have had control of the premises in the first place. Indeed, if control requires unrestricted access to the premises, few contractors could ever establish the right to control the premises. We do not read the law to impose premises liability duties on contractors only when the owner has relinquished all right to control or restrict access to its property.

[6] The dissent seems to contend that Levine's claim sounds in general negligence based on a line of cases originating with our 1962 decision in *Strakos v. Gehring*, 360 S.W.2d 787, 790 (Tex. 1962), in which we rejected the accepted-work doctrine and held that a contractor whose work created a dangerous condition on the property that ultimately caused injury is not immune from liability solely because his work was completed and accepted by the owner before the plaintiff's injury. ___ S.W.3d at ___ n.9. While we have suggested that a contractor in such circumstances could be liable based on general-negligence principles, we have not had occasion to consider a negligence claim brought under *Strakos* or how such a claim should be submitted to a jury. *See, e.g.*, *Strakos*, 360 S.W.2d at 790–92, 802 (holding

21

restriction on its own employees' use of USI-constructed scaffolding—a mandate requiring USI to authorize the use of a scaffold following a proper inspection—shows that USI retained control over the scaffold from construction through dismantling. Essentially, once Valero placed USI in the sole position to authorize the use of scaffolds it constructed, USI attained the sufficient right to control those scaffolds. Because USI was obligated to inspect the scaffolds on any given day before Valero's workers used them, USI maintained the right to control the scaffolds until they were dismantled. Thus, Levine's allegations and the evidence establish that the nature of Levine's claim relies on USI's having retained the right to control the relevant part of the premises—the scaffold on which Levine alleges he was injured—such that USI had a responsibility to warn of or remedy a dangerous condition. *See Cty. of Cameron*, 80 S.W.3d at 556; *cf. Peña*, 442 S.W.3d at 265 (noting that the plaintiff bears the burden of proof on ownership or control and absence of any such evidence is fatal to the plaintiff's claim); *Allen Keller*, 343 S.W.3d at 426 ("As a general rule, 'a plaintiff must prove that the defendant possessed—that is, owned, occupied, or controlled—the premises where injury occurred.'" (citations omitted)).

### 4. Summary

We conclude, based on the source of Levine's injury, his pleadings and allegations, and the evidence presented at trial, that Levine's case sounds in premises liability. *See, e.g.*, *Del Lago*, 307

---

that the contractor was liable for failure to warn and make safe despite the owner's having accepted contractor's completed work); *Allen Keller*, 343 S.W.3d at 426 (holding that the contractor owed no duty to warn the public or rectify the unreasonably dangerous site condition); *Occidental*, 478 S.W.3d at 648–49 (holding that the former property owner breached no duty to plaintiff who was injured after property was sold to new owner). We do not address such claims here, as the record contains no evidence that USI's work on the subject scaffold was completed or that Valero had accepted USI's work.

22

S.W.3d at 776 (holding that the claim was properly tried and submitted as a premises liability case because the plaintiff's primary complaint, that his injury resulted from the defendant's nonfeasance tied to its failure to remedy an unreasonably dangerous condition, determined the character of his claim); *Warner*, 845 S.W.2d at 259 ("[W]e hold that [the plaintiff's] First Amended Original Petition, fairly read, alleged only a claim based upon premises liability." (citing *Corbin*, 648 S.W.2d at 295)).

The court of appeals improperly relied on the assumption that USI's control must be exclusive, believing that only one party can have control at a time. *See* ___ S.W.3d at ___ (noting that USI failed to point to a contractual provision stating that USI was "the only entity" able to inspect the scaffolds and concluding that a Valero witness's testimony negated the argument that USI "solely controlled the premises"). But we have never required exclusive control in the premises liability context. We have merely required "sufficient control over the part of the premises that presented the alleged danger so that the defendant has the responsibility to remedy it." *Cty. of Cameron*, 80 S.W.3d at 556; *cf. Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993) ("[T]he court's inquiry must focus on who had specific control over the safety and security of the premises, rather than the more general right of control over operations. . . . If [the defendant] did not have any right to control the security of the station, it cannot have had any duty to provide the same."). The court of appeals' decision expanded the scope of the control inquiry to consider factors such as control of refinery operations, employee compliance with employer policies, and lay witness speculation as to who should be legally responsible if Valero conducted an inspection. ___ S.W.3d at ___. But the relevant inquiry for determining what, if any, duties USI owed to Levine is USI's

23

control over the scaffold itself. *See Cty. of Cameron*, 80 S.W.3d at 556; *Tidwell*, 867 S.W.2d at 23. Thus, the question is not whether Valero also had control, or even whether Valero had *more* control; rather, the duty question must focus on USI's right to control the scaffold and subsequent responsibility to warn about or remedy a dangerous condition on the scaffold. Levine's pleadings assert allegations that require USI to have had this right, and USI does not dispute it. Moreover, the evidence establishes that Levine's allegations are based on USI's having sufficient control over the scaffold to owe Levine a duty of care as to dangerous conditions on the scaffold.[7] Levine's pleadings and the record evidence do not support his contrary assertion on appeal that USI had no control.

Even if Levine attempted to characterize his claim as something other than premises liability, "[c]reative pleading does not change the nature of a claim." *Sampson*, 500 S.W.3d at 386 (citations omitted). "[I]f a claim is properly determined to be one for premises defect, a plaintiff cannot circumvent the true nature of the claim by pleading it as general negligence." *Id.* at 389 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 230–33 (Tex. 2004)). Such creative pleading would allow plaintiffs to "plead around the heightened standard for premises defects, which requires proof of additional elements such as actual knowledge." *Id.* at 385. Likewise, one cannot transform the true nature of a claim by submitting it to the jury under a different theory of recovery. *See Olivo*, 952 S.W.2d at 529; *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 839–40 (Tex. 2000) (acknowledging that in *Olivo*, we implicitly concluded that general-negligence questions submitted in premises liability cases were "immaterial" because "absent any determination that the

---

[7] *See supra* Part II.B.3.b.

factual predicates giving rise to a legal duty were satisfied, the defendants' failure to use reasonable care was of no legal consequence" (citing *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995))).

The dissent characterizes our opinion as "misstating" Levine's pleadings and the evidence. ___ S.W.3d at ___. But the dissent's recitation of Levine's pleadings and trial testimony supports our analysis. The dissent also characterizes our opinion as "misstating" the standard of review. *Id.* at ___. But the dissent mischaracterizes our analysis in *Olivo* in a veiled effort to overrule its holding.[8] Finally, the dissent seems to question our discussion of the controlling law and the duties applicable in this case. *Id.* at ___ n.3, ___ n.9. Yet our opinion addresses only a narrow legal rule with which the dissent seems to agree—a premises defect claim against a contractor who retained the right to control the premises at the time of the plaintiff's alleged injury must be submitted to the jury as a premises liability claim.

### C. Submission of Levine's Claim

Just as Levine "cannot circumvent the true nature of [his] claim by pleading it as one for general negligence," he cannot creatively request jury questions that would do the same. *Sampson*, 500 S.W.3d at 389; *see also Torrington*, 46 S.W.3d at 839–40; *Olivo*, 952 S.W.2d at 529. Considering Levine's pleadings, the nature of the case, the evidence presented at trial, and the charge in its entirety, we conclude that the theory of recovery submitted to the jury did not reflect the claim

---

[8] *See supra* note 1.

that was raised by the pleadings and the evidence. *See* TEX. R. CIV. P. 278; *Island Recreational*, 710 S.W.2d at 555.

Because this case was submitted to the jury under only a general-negligence theory of recovery, without the elements of premises liability as instructions or definitions, the verdict "cannot support a recovery in a premises defect case." *Olivo*, 952 S.W.2d at 529; *see also Little Rock Furniture Mfg. Co. v. Dunn*, 222 S.W.2d 985, 990 (Tex. 1949) (explaining that before a party is entitled to judgment, it must satisfy its burden of obtaining jury findings in its favor on every essential element of its claim). Having elected not to request a premises liability question or instruction and not to obtain findings on the premises liability elements, including knowledge, Levine waived his premises liability claim. *See* TEX. R. CIV. P. 279 ("[A]ll independent grounds of recovery . . . not conclusively established under the evidence and no element of which is submitted or requested are waived."). No basis remains for Levine to recover against USI. *See Olivo*, 952 S.W.2d at 529; *see also BP Am. Prod. Co. v. Red Deer Res., LLC*, ___ S.W.3d ___, ___ & n.6 (Tex. 2017) (rendering judgment in favor of the defendant when the plaintiff "submitted a theory upon which it could not recover" and failed to request and obtain findings to support judgment in its favor on a proper theory of recovery); *USAA Tex. Lloyds Co. v. Menchaca*, ___ S.W.3d ___, ___ (Tex. 2017) (explaining that "[a] jury finding is immaterial when the question should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings" (internal quotations and citations omitted)); *Torrington*, 46 S.W.3d at 839–40 (holding that general-negligence findings in the context of premises liability are immaterial).

### III. Preservation of Error

Levine argues that even if his claim should have been submitted under a premises liability theory of recovery, USI either waived the argument because it did not object to the jury charge or invited the error by requesting a general-negligence submission in the first trial. We first address Levine's argument that USI waived its submission argument by failing to object to the jury charge. A defendant has no obligation to complain about a plaintiff's omission of an independent theory of recovery; rather, the burden to secure proper findings to support that theory of recovery is on the plaintiff, and a plaintiff who fails to satisfy that burden waives that claim. TEX. R. CIV. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."). "If an entire theory were omitted from the charge it would be waived; and [the defendant] would indeed have no duty to object." *Ramos v. Frito-Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990) (citing TEX. R. CIV. P. 279; *Strauss v. LaMark*, 366 S.W.2d 555, 557 (Tex. 1963)); *see also Olivo*, 952 S.W.2d at 529–30 (instructing that "a simple negligence question, unaccompanied by the *Corbin* elements as instructions or definitions, cannot support a recovery in a premises defect case" (citations omitted)).

We recognize, as USI points out, that a defendant must preserve error by objecting when an independent theory of recovery is submitted defectively. *See* TEX. R. CIV. P. 279. This includes when an element of that theory of recovery is omitted. *See id.* But when, as in this case, the wrong theory of recovery was submitted and the correct theory of recovery was omitted entirely, the defendant has no obligation to object. Were we to adopt Levine's argument that a defendant bears the burden to object to a jury charge not supported by the plaintiff's pleadings or the evidence

27

adduced at trial, we would effectively force the defendant to forfeit a winning hand. Should the plaintiff fail to ensure that the trial court submits the appropriate theory of recovery to the jury, we see no reason to require the defendant to ask the trial court to fix an error that would, as here, ultimately result in a judgment in its favor.

Next, Levine argues that USI invited the charge error by requesting a general-negligence question in the first trial even though the same request was not made in the second trial, which gave rise to this appeal. Levine's reliance on USI's actions in the first trial is misplaced. We have acknowledged that a defendant may invite error and waive its argument on appeal when it persuades a trial court to adopt a jury charge that it later alleges supports an improper theory of recovery. *See Del Lago*, 307 S.W.3d at 775–76 (holding that the defendant waived its ground for reversal by objecting to submission of negligent-activity theory at trial and then alleging on appeal that the proper theory of recovery was negligent activity). But here, once the trial court ordered a new trial, USI could invite error only in the second trial. *See Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005) ("[W]hen the trial court grants a motion for new trial, the court essentially wipes the slate clean and starts over."). The record reflects that USI did not invite error in the second trial.

Finally, we hold that USI preserved its submission argument by raising it in a motion for judgment notwithstanding the verdict. *See Menchaca*, ___ S.W.3d at ___ & n.8 (concluding that because the defendant's argument was a purely legal issue, the defendant preserved error by asserting the argument in a post-verdict motion). USI cited *Olivo* in support of its request for a take-nothing judgment. This gave the trial court notice of USI's complaint that the verdict was based on an

28

immaterial theory of recovery that could not support Levine's recovery on a premises liability claim. *See* TEX. R. APP. P. 33.1; *Torrington*, 46 S.W.3d at 839–40; *Olivo*, 952 S.W.2d at 529.

## IV. New Trial Order

USI challenges the trial court's order granting a new trial, contending that the trial court abused its discretion because the bases it provided for granting a new trial were facially insufficient and because sufficient evidence supported each jury finding in the first trial. *See In re Bent*, 487 S.W.3d 170, 173 (Tex. 2016) (orig. proceeding) (citing *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 213 (Tex. 2009) (orig. proceeding); *In re United Scaffolding, Inc.*, 377 S.W.3d at 688–89; *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 749 (Tex. 2013) (orig. proceeding)). While Levine argues that merits-based review of the new trial order was appropriate only through a mandamus proceeding,[9] USI asserts that appellate review of the new trial order after the second trial "is absolutely essential." The court of appeals held that the direct appeal of an order granting new trial is not permitted "once the order has merged into a final judgment." ___ S.W.3d at ___.

---

[9] Levine also makes three arguments that USI waived its right to object to the order granting a new trial. First, although USI twice pursued mandamus relief in this Court, USI did not object to the new trial order at issue or otherwise raise complaints in the trial court. *See* TEX. R. APP. P. 33.1(a) (requiring preservation of a complaint in the trial court through timely request, objection, or motion stating specific grounds for ruling sought). Second, although USI complained in the court of appeals that the trial court erred in granting a new trial, USI failed to raise the specific arguments that it now makes in support of its position that the trial court abused its discretion. *See* TEX. R. APP. P. 53.2(f) (stating that matters originating in the trial court should have been preserved for appellate review in the trial court and assigned as error in the court of appeals). Third, although USI's petition for review contains arguments similar to those USI made in the court of appeals, Levine argues that USI never raised its specific complaints about the form and explanation of the new trial order until its brief on the merits in this Court. *See* TEX. R. APP. P. 55.2(f) (stating that a petitioner's brief on the merits must be confined to issues or points stated in the petition for review); *Ramos v. Richardson*, 228 S.W.3d 671, 673 (Tex. 2007) (per curiam) (refusing to address an argument raised in petitioners' brief on the merits because petitioners failed to advance it in their petition for review). Because we do not decide USI's challenge to the new trial order, we also do not address Levine's preservation arguments.

This issue presents an interesting quagmire. We have recognized that appellate courts may "conduct a merits review of the bases for a new trial order" in an original proceeding and grant mandamus relief "[i]f the record does not support the trial court's rationale for ordering a new trial." *In re Toyota Motor Sales*, 407 S.W.3d at 749. We explained that "it would make little sense to conclude now that the correctness or validity of the orders' articulated reasons cannot also be evaluated." *Id.* at 758. Yet "mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when an adequate remedy by appeal does not exist." *In re Columbia Med. Ctr.*, 290 S.W.3d at 207 (citations omitted). USI admits that it could have sought merits-based review by filing a petition for writ of mandamus before the second trial began. But USI declined to do so and opted instead to move forward with the second trial. USI now urges us to, in essence, void its choice, arguing that "mandamus is never compulsory." Levine counters by asserting that our decisions allowing merits-based mandamus review of new trial orders have essentially held that such "litigants do not have an adequate remedy on appeal."

We do not reach this issue, however, because our holding on the submission issue results in rendition of judgment in USI's favor, provides all the relief USI requests, and forecloses consideration of additional issues that do not provide the greatest relief. *See CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000) (declining to reach a venue question that would potentially result in remand after deciding a legal-sufficiency question that resulted in rendition); *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (per curiam) ("Generally, when a party presents multiple grounds for reversal of a judgment on appeal, the appellate court

30

should first address those points that would afford the party the greatest relief."). With this ruling, USI concedes that we need not reach its challenge to the trial court's order granting a new trial.

## V. Conclusion

Considering Levine's pleadings, the nature of the case, the evidence presented at trial, and the jury charge in its entirety, we hold that Levine's claim is properly characterized as one for premises liability. Levine's failure to request or secure findings to support his premises liability claim, therefore, "cannot support a recovery" in this instance. *Olivo*, 952 S.W.2d at 529. Additionally, USI was under no obligation to object to Levine's submission of an improper theory of recovery, and USI preserved its improper-theory argument by raising it in a motion for judgment notwithstanding the verdict. *See* TEX. R. APP. P. 33.1; TEX. R. CIV. P. 279; *Menchaca*, ___ S.W.3d at ___ & n.8. Accordingly, we reverse the court of appeals' judgment and render a take-nothing judgment in USI's favor. We decline to reach the issue of whether a party may challenge a new trial order by direct appeal following the completion of the new trial, as resolution of the submission issue affords USI all the relief it has requested.

_____
Paul W. Green
Justice

OPINION DELIVERED: June 30, 2017

31