**AFFIRM; and Opinion Filed March 28, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00856-CV

**CHAN PARK, Appellant**
**V.**
**EXXON MOBIL CORPORATION, Appellee**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-02026-D**

## OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice Brown

At issue in this premises liability case is whether Exxon Mobil Corporation owed Chan Park the duty to protect him from the criminal acts of third parties. After Park was shot at an Exxon Mobil station, he sued Exxon Mobil for negligence. The trial court granted Exxon Mobil's motion for summary judgment, in which it asserted it owed no duty to Park because the crime against him was not foreseeable. In six issues, Park contends the trial court erred in granting the motion for summary judgment. Because we conclude as a matter of law that the shooting was not foreseeable, we affirm the trial court's judgment.

At about 2 a.m. on July 15, 2009, Park was on his way home from work at a convenience store he owned. He stopped to get gas at an Exxon Mobil station located at 1607 Inwood Road in Dallas. As was his custom, Park had change and small bills from his store in a paper bag on the floor on the passenger side of his car. He had larger bills from the store in his pants pockets.

As Park prepared to get gas, a man got out of another car and shot him. The man then went into Park's car, removed something from the passenger's side, and got back into the getaway vehicle. The entire incident took about ten seconds. The police found many quarters scattered on the ground at the scene. Park was treated at a hospital and survived his injuries.

Park sued Exxon Mobil for negligence, asserting it owed a duty to protect him, as a business invitee, from the foreseeable criminal acts of third parties.[1] Park alleged that Exxon Mobil knew or should have known of a pattern of criminal activity in the area that posed a foreseeable risk of harm and did not take reasonable steps to prevent the danger. Among other things, he asserted Exxon Mobil was negligent in failing to: provide additional security in the parking lot late at night, provide fencing to limit escape routes, and retain a security patrol or a security guard.

Exxon Mobil filed a traditional and no evidence motion for summary judgment on grounds that it owed Park no duty as the incident in question was not foreseeable. The trial court granted Exxon Mobil's motion. This appeal followed.

In his first four issues, Park contends the trial court erred in granting Exxon Mobil's motion for summary judgment because there is a fact issue on the issue of duty. Specifically, Park contends there is a fact issue regarding whether the crime committed against him was foreseeable. We disagree.

We will review the trial court's order as a ruling on a traditional motion for summary judgment, which we review de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The standard for reviewing a traditional motion for summary judgment under rule 166a(c) is well established. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex.

---

[1] Park also sued Elaine McKeon, owner of the land on which the gas station is located. McKeon moved for summary judgment on grounds that she owed no duty to Park because she leased the premises to Exxon Mobil and thus did not control security or safety. Park does not appeal the trial court's summary judgment for McKeon.

1985); *see* TEX. R. CIV. P. 166a(c). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon,* 690 S.W.2d at 548-49. In deciding whether a material fact issue exists, evidence favorable to the non-movant will be taken as true. *Id.* at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

## Duty

The existence of a duty is a question of law determined by the court. *Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008); *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). Generally, there is no duty to protect others from the criminal acts of third parties. *Trammell Crow,* 267 S.W.3d at 12; *Timberwalk*, 972 S.W.2d at 756. However, one who controls the premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee. *Trammell Crow*, 267 S.W.3d at 12. A duty exists only when the risk of criminal conduct is so great that it is both unreasonable and foreseeable. *Timberwalk*, 972 S.W.2d at 756.

### Foreseeability Based on Previous Crimes and the *Timberwalk* Factors

Foreseeability is established through evidence of specific previous crimes on or near the premises. *Trammell Crow*, 267 S.W.3d at 12; *Timberwalk*, 972 S.W.2d at 756. Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Timberwalk*, 972 S.W.2d at 756. Foreseeability is not determined in hindsight, but rather in light of what the owner knew or should have known before the criminal act occurred. *Id.* at 757. To determine whether the risk of criminal conduct is foreseeable, a court weighs the evidence of prior crimes using the following five factors: proximity, publicity, recency, frequency, and similarity. *Trammell Crow*, 267 S.W.3d at 15; *Timberwalk*, 972 S.W.2d at 759.

–3–

These factors have come to be known as "the *Timberwalk* factors." *See Taylor v. Louis*, 349 S.W.3d 729, 736 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In *Timberwalk,* the Texas Supreme Court analyzed these factors and held that an apartment complex owed no duty to provide additional security to a tenant who was sexually assaulted in her apartment by an intruder when no violent crime had occurred at the apartment complex for the preceding ten years. *Timberwalk*, 972 S.W.2d at 759.

Ten years later, the supreme court examined the *Timberwalk* factors again in its opinion in *Trammell Crow Central Texas, Inc. v. Gutierrez*, and that opinion provides the framework by which we examine the issue of foreseeability in this case. *Trammell Crow* involved a shooting death in the parking lot of the Quarry Market mall in San Antonio. Like Park in this case, the plaintiffs alleged the property manager, Trammell Crow, negligently failed to provide adequate security at the mall. In determining whether previous crimes at the mall made the shooting foreseeable, the supreme court limited its review to the instances of violent crime that took place at the Quarry during the two years prior to the incident in question. *Trammell Crow*, 267 S.W.2d at 13. After analyzing ten violent crimes in terms of their proximity, publicity, recency, frequency, and similarity, the court held that Trammell Crow could not have reasonably foreseen or prevented the crime and thus owed no duty.[2] *Id.* at 17.

Here, there were five instances of violent crime at or adjacent to the Exxon Mobil station in the two years prior to Park's shooting in July 2009:

---

[2] Park contends *Trammell Crow* has no application in this case for the following reasons: 1) in *Trammell Crow* there was a trial on the merits; 2) the premises at issue in each case are "wholly dissimilar" - an upscale shopping mall versus a gas station on the interstate; 3) Park was an innocent victim, while in *Trammell Crow* there was some evidence the victim was targeted in retaliation for providing information to the police on a series of burglaries in which he was involved; 4) the crime in *Trammell Crow* was murder, whereas in this case it was aggravated robbery; 5) *Trammell Crow* only considered prior criminal activity at the shopping mall and did not address crimes *near* the mall; and 6) Trammell Crow's expert offered statistical evidence to show the rate of violent crime at the Quarry was significantly lower than for the City of San Antonio in general. We do not find these reasons to disregard *Trammell Crow* persuasive. The difference in procedural posture is irrelevant. Although there was a judgment on a jury verdict in *Trammell Crow*, the supreme court reversed and rendered a take-nothing judgment in favor of the property manager. In that case, as here, whether a duty existed is a matter of law for the court to decide. While there are facts distinguishing this case from *Trammell Crow*, this does not change the fact that *Trammell Crow* provides a reference point for analyzing foreseeability in these kinds of cases.

–4–

1.  November 18, 2007 at 1:15 a.m. - As the complainant was walking on the street near the Exxon Mobil, two men approached him. One man pulled out a pocket knife. The men tried to take his property. When the complainant fought back, the other man hit him with his fist. The complainant suffered a minor scrape on his hand from the knife. The suspects took the complainant's money and fled on foot.

2.  April 5, 2008 at 10:11 p.m. - A suspect entered the Exxon Mobil store and purchased some gum and a soft drink. When he paid for the items, he handed the clerk a note stating, "Give me the money or I will shoot you." The suspect did not present a weapon, and the employee did not see one. The suspect immediately grabbed his purchases and the note off the counter and ran out of the store.

3.  July 2, 2008 at 5:40 a.m. - Two men entered the Exxon Mobil store. One walked up to the cashier, displayed a small handgun, and demanded she open up the cash register and put the money in a sack. After another employee opened the register, the cashier put the money in a sack. The second man ordered the other employee to open another register and put that money in a sack. The men ran out of the store and were apprehended nearby.

4.  October 21, 2008 at 12:20 a.m. - The complainant was pumping gas at the Exxon Mobil station when a suspect cut him with a pocket knife on his hand and tried to take his keys.

5.  December 19, 2008 at 11:45 p.m. - The complainant was in line inside the Exxon Mobil store when a man started harassing him. When the complainant walked outside the store, the man continued to harass him, and the two men started to exchange punches. Another man got out of a car and cut the complainant's arm and back with a pocket knife. He also stabbed the complainant in the arm with the knife.

## Proximity and Publicity

We first examine the *Timberwalk* factors of proximity and publicity as they relate to this case. Proximity means crimes occurring on the property in question or in its immediate vicinity. *Timberwalk*, 972 S.W.2d at 757. The publicity surrounding previous crimes helps determine whether a landowner knew or should have known of a foreseeable danger. *Id.* at 758. Property owners bear no duty to regularly inspect criminal records to determine the risk of crime in the area. *Id.* at 759. When the occurrence of criminal activity is widely publicized, however, an owner can be expected to have knowledge of such crimes. *Id.*

There is no dispute that the five violent crimes recounted above occurred at or immediately adjacent to the Exxon Mobil station and that Exxon Mobil was aware or should have been aware of them. In addition to these crimes, Park urged the trial court to consider evidence of "a substantial pattern of major criminal activity" in the area near the Exxon Mobil station. Park presented evidence that in the three-and-a-half year period from January 1, 2006 to July 15, 2009, there were a total of 353 violent crimes reported within a one-mile radius of the Exxon Mobil station. Two of these crimes were murders, 160 were robberies, and 147 were aggravated assaults. There is no evidence to show any details of these crimes or to show what publicity was given to them to indicate that Exxon Mobil knew or should have known about any of them.

## Recency and Frequency

Although the five foreseeability factors present distinct considerations, the supreme court has considered recency and frequency together. A criminal act is more likely foreseeable if numerous prior crimes are concentrated within a short time span than if few prior crimes are diffused across a long time span. *Trammell Crow*, 267 S.W.3d at 15. In *Trammell Crow*, the court considered the fact that the Quarry was home to ten violent crimes committed over a

twenty-three-month period before the murder, equating to one violent crime every sixty-nine days. *Id.*; *cf. Mellon Mort. Co. v. Holder*, 5 S.W.3d 654, 657 (Tex. 1999) (rape foreseeable in area that witnessed one violent crime every four days). Here, the Exxon Mobil station saw five violent crimes in the twenty-month period preceding Park's shooting, for a rate of one violent crime every 121 days. No violent crimes were committed at the station in the six months before Park's shooting.

### Similarity

A court must also consider the similarity of the past crimes to the criminal conduct in question. *Trammell Crow*, 267 S.W.3d at 16. Foreseeability does not require the exact sequence of events that produced the harm to be foreseeable. *Id.* Rather, previous crimes need only be sufficiently similar to the crime in question to put the owner on notice of the specific danger. *Id.* Crimes fitting one category can relate to or result in crimes of another category. For example, a string of violent crimes such as robberies or assaults can make other violent crimes like murder or rape foreseeable. *Id.*

Here, four of the five violent crimes at the Exxon Mobil station in the two years prior to Park's shooting were robberies. In two of these robberies, suspects robbed the store, not its customers. Another robbery involved a non-customer on the street adjacent to the gas station. A pocket knife was used in that crime and the complainant sustained only minor injuries. In the one robbery involving a customer, a pocket knife was again used and the injuries the victim sustained were minor. The fifth crime on the property was an assault with a knife after a disagreement between customers. Only once in the two years preceding the robbery of Park was a gun used to commit a crime at or adjacent to the gas station. And in that instance the gun was

displayed to a store clerk, not fired. At no time in the preceding two years was anyone shot at the Exxon Mobil station.[3]

Considering the five *Timberwalk* factors, we conclude as a matter of law that the aggravated robbery of Park was not foreseeable based on evidence of prior crimes. *Cf. Trammell Crow*, 267 S.W.3d at 17 (ten violent crimes in two years preceding shooting death at mall insufficient to put property owner on notice that murder would occur as part of robbery on premises). Regarding the crimes within a one-mile radius of the gas station, there is nothing in the record to show any of those crimes were publicized such that Exxon Mobil should have been aware of them. And the previous crimes at the property were not sufficiently frequent and similar to give rise to a duty in this case.

**Other Summary Judgment Evidence**

Apart from the evidence of prior violent crimes, Park contends that other summary judgment evidence raised a fact issue on foreseeability. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 768 (Tex. 2010) ("The *Timberwalk* factors are not the only reasons that a criminal act might be deemed foreseeable."). Specifically, Park refers to the following evidence: the fact that the manager of the Exxon Mobil in question had requested security guards, the fact that Exxon Mobil barred its employees from going outside the store late at night, the existence of, and failure to follow, procedures designed to assess the risk of criminal activity, and opinions from two expert witnesses that Park's shooting was foreseeable.

Chris Beckner, a territory manager for Exxon Mobil, testified in his deposition that at one time prior to Park's shooting he had requested security guards and was told it would not happen.

---

[3] Park presented evidence that two customers had previously been shot at this Exxon Mobil station. Those shootings occurred in June 2004 and August 2005, four and five years before Park was shot and well outside the two-year timeframe used in *Trammell Crow*. Neither the court of appeals nor the supreme court in *Trammell Crow* indicated how it arrived at this two-year timeframe other than it appears that was how the evidence was presented in that case. *See Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 200 S.W.3d 33 (Tex. App.—San Antonio 2006), *rev'd*, 267 S.W.3d 9 (Tex. 2008). The supreme court referred to two years as a "reasonable time," and we agree. *See Trammell Crow*, 267 S.W.3d at 17. Further, in *Mellon*, which involved a rape in a parking garage, the supreme court also looked at the rate of violent crime near the garage for the two years preceding the rape. *Mellon Mort. Co.,* 5 S.W.3d at 657.

The record reflects that Beckner's request for security guards was not specific to the Inwood location. He stated, "[W]e needed security guards at some of these stores because of panhandling incidents." Also, the fact that an owner employs security guards, or that one of its employees wants to employ them, does not necessarily mean that a crime was foreseeable. The mere act of taking preventative measures to protect against the possibility of future crime is not the same as foreseeing that criminal activity. *Allen v. Connolly*, 158 S.W.3d 61, 67 (Tex. App.— Houston [14th Dist.] 2005, no pet.). We note that security guards were employed and on duty at the Quarry Market in the *Trammell Crow* case. *Trammell Crow*, 267 S.W.3d 12-13. We cannot conclude that a denied request for security guards to deter panhandlers raises a fact issue about whether the shooting of a customer was foreseeable.

Adana Kersa, the sales associate at work the night of Park's shooting, testified that it was company policy for store employees to not go outside during the night shift (from 10 p.m. to 6 a.m.) for safety reasons. Beckner's testimony suggests that this policy was not specific to the Inwood location. Again, taking measures to protect against the possibility of future crime is not the same as foreseeing that criminal activity. *Allen*, 158 S.W.3d at 67.

Park also relies on Exxon Mobil's January 2006 "US CORS Retail Site Security Program," which consists of operational guidelines "to help deter and reduce the probability of security incidents." One provision was that security advisors are expected to conduct a security threat assessment to determine what additional security equipment was needed beyond the minimum. Further, the CORS Standard Operating Procedures, dated October 2007, provided that "Night Ride Inspections" must be performed monthly by a manager to ensure proper procedures are followed on the night shifts. Park presented evidence that James Copeland, operation manager for Exxon Mobil, was not aware of any threat assessments being performed for the gas station in question for the five years before the shooting. Copeland also testified that

night rides were not performed during the time he was operation manager. Beckner stated in his deposition that night rides stopped at the end of 2007.

Assuming these policies and procedures were still in effect at the time of the 2009 shooting, their mere existence does not raise a fact issue on foreseeability. *See id.* (installation of alarm system at office is not evidence of foreseeability of future crimes). Further, we have concluded that the previous crimes at or in the immediate vicinity of the Exxon Mobil station were not sufficiently frequent and similar to make the crime against Park foreseeable. Thus, even if Exxon Mobil had followed its procedures for evaluating the risk of criminal activity in the area, there is no reason to believe this would have made the crime against Park foreseeable. Any failure by Exxon Mobil to follow its procedures for assessing the risk of criminal activity at the station does not raise a fact issue on foreseeability.

Finally, Park provided testimony from two experts in law enforcement, William Rathburn and Harold Warren. Both experts examined the crime statistics for a one-mile radius around the Exxon Mobil station for the five years preceding Park's shooting, as well as evidence of nine violent crimes committed at the Exxon Mobil in this same timeframe. Rathburn concluded that based on the number of similar violent crimes at the gas station, Exxon Mobil knew or had reason to know there was a foreseeable risk of harm to its customers. Likewise, Warren stated in an affidavit that, in his opinion, the crimes committed against Park were reasonably foreseeable. The existence of a legal duty is a matter for the court, rather than an expert witness, to decide. *Boren v. Texoma Med. Ctr., Inc.*, 258 S.W.3d 224, 229 (Tex. App.—Dallas 2008, no pet.). Expert testimony is insufficient to create a duty where none exists at law. *Id.; Allright San Antonio Parking Inc. v. Kendrick*, 981 S.W.2d 250, 255 (Tex. App.—San Antonio 1998, no pet.).

For these reasons, we cannot conclude this other evidence raises a fact issue on foreseeability. We resolve Park's first four issues against him. Because we have concluded

–10–

Exxon Mobil owed no duty to Park as a matter of law, we need not address his remaining two issues regarding his entitlement to punitive damages for Exxon Mobil's gross negligence.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

120856F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHAN PARK, Appellant

No. 05-12-00856-CV      V.

EXXON MOBIL CORPORATION,
Appellee

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-11-02026-D.
Opinion delivered by Justice Brown.
Justices O'Neill and Myers participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

     It is **ORDERED** that appellee EXXON MOBIL CORPORATION recover their costs of
this appeal from appellant CHAN PARK.


Judgment entered this 28th day of March, 2014.



/Ada Brown/

ADA BROWN
JUSTICE