**AFFIRMED and Opinion Filed April 28, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00067-CV

**JEANETTE ENGLER AND RICHARD LICHDEAN, Appellants**
**V.**
**THE RITZ-CARLTON HOTEL COMPANY, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-17624**

## MEMORANDUM OPINION

Before Justices Carlyle, Garcia, and Rosenberg[1]
Opinion by Justice Garcia

Appellants Jeanette Engler and Richard Lichdean sued appellee The Ritz-Carlton Hotel Company ("RC"), alleging that their wedding at the Ritz-Carlton Dallas hotel was ruined by a burglary in Engler's bridal suite during the rehearsal dinner. The trial judge rendered a take-nothing summary judgment in favor of RC. Engler and Lichdean appeal. We affirm.

---

[1] The Hon. Barbara Rosenberg, Justice, Assigned

## I. BACKGROUND

### A. Factual Allegations

Appellants alleged the following facts in their live pleading at the time of judgment.

Appellants got engaged and visited the Ritz-Carlton Dallas hotel before choosing it as their wedding venue. Hotel personnel "represented that they would ensure the security of the guests and their rooms, and they promised to immediately resolve any problems that may occur at their hotel." Appellants chose the Ritz-Carlton Dallas hotel as their wedding venue and arrived on March 9, 2017, for the four-day celebration. Engler's room was suite 705.

Appellants' rehearsal dinner was the evening of March 10. At around 6:00 p.m., Engler interacted with Valeria Gomez, who was an employee of Premier Cleaning Services and a borrowed servant of RC. Gomez entered Engler's suite and announced she was there for "turndown service." Gomez left, and soon thereafter Engler also left to attend the rehearsal dinner. When Engler left, "she confirmed that both entry doors to her suite were shut, locked, and secured."

While Engler was gone, Gomez returned to Engler's suite to perform turndown and cleaning services. She propped open the main entry door to the suite

while performing those services. A burglar (identified in summary-judgment evidence as Omar Rimlawi) accessed the room through the propped-open door.[2]

When Engler returned to her suite at around 10:10 p.m., she discovered that the suite had been ransacked. Numerous items were stolen, including an engagement ring and wedding band, designer cosmetics, wedding gifts, medications, and jewelry. Other items were ruined or scattered throughout the room. Lichdean called the police. After the police arrived, they observed Engler's state of mind and took her away in handcuffs for a mental-health evaluation. She was released at about 4:00 a.m. and returned to the hotel. She was not allowed to return to her suite but instead was given a standard non-suite room. The wedding still took place, but Engler and Lichdean experienced and continued to experience severe emotional and psychological distress stemming from the burglary.

## B.    Procedural History

In 2018, appellants sued RC and Premier. Their claims against Premier were disposed of via pretrial motions, and on appeal they do not attack the judgment as it concerns Premier.

---

[2] The summary-judgment evidence contains Gomez's deposition testimony that she closed the door when she entered the room to perform housekeeping services. However, it also contains deposition testimony from another housekeeper, Maria Moreno, that at around 7:15 or 7:20 she joined Gomez in working on Engler's room, and the door was open when she arrived there. Moreno also said that she and Gomez left the room together and closed the door and that she never saw a man in the room. As our analysis below shows, the discrepancy in the evidence does not affect the outcome of this appeal.

In October 2020, appellants filed their Seventh Amended Petition, which was their live pleading at the time of judgment. Appellants asserted the following claims against RC:

- Negligent hiring, supervision, training, and retention;

- General negligence;

- Negligent undertaking;

- Gross negligence

- Intentional infliction of emotional distress;

- Violations of the Deceptive Trade Practices-Consumer Protection Act ("DTPA");

- Premises liability; and

- Breach of contract.

Soon thereafter, RC filed a First Amended Traditional and No-Evidence Motion for Partial Summary Judgment ("First MSJ") that attacked appellants' claims for (i) DTPA violations, (ii) gross negligence and exemplary damages, (iii) intentional infliction of emotional distress, and (iv) negligent hiring, training, supervision, or retention. The First MSJ also attacked appellants' ability to recover mental-anguish or emotional-distress damages under any legal theory. Appellants filed a response to the motion. They later filed a supplemental response, which RC moved to strike.

The trial judge signed an order granting RC's First MSJ that did not state the reasons for the ruling. The judge also signed a separate order granting RC's motion

–4–

to strike appellants' supplemental summary-judgment response. Appellants do not complain on appeal about the striking of their supplemental response, so we will not discuss that response further in this opinion.

In September 2021, the trial judge signed a partial-summary-judgment order in appellants' favor, ruling that Gomez was a "borrowed employee" of RC at the time of the incident at issue in this case.

Also in September 2021, RC filed a motion for summary judgment ("Second MSJ") in which it argued that appellants' case was governed solely by premises-liability law and that RC was entitled to summary judgment on appellants' premises-liability claims because it owed appellants no legal duty and because proximate causation was lacking. Appellants filed a response to the Second MSJ.

On October 26, 2021, the trial judge signed an order that sustained certain objections RC lodged against some of appellants' evidence, granted RC's Second MSJ, and rendered judgment that appellants "take nothing on their causes of action against" RC. Appellants filed a motion to reconsider that order and a supplemental motion to reconsider that order. On November 4, 2021, the trial judge signed a modified order that allowed appellants to amend one of their summary-judgment affidavits and then overruled certain objections RC had made to that affidavit. The modified order still granted RC's Second MSJ "in all respects" and still rendered judgment that appellants take nothing on their causes of action against RC. The modified order also contained express rulings that (1) appellants' premises-liability

claims failed because the criminal conduct of an unknown third party was not foreseeable to RC and (2) appellants' general-negligence and other claims were foreclosed as a matter of law because appellants' claims sounded solely in premises liability under cases such as *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex. 1998). That same day, the trial judge signed a take-nothing final judgment in RC's favor.

Appellants timely filed a motion for new trial, which the trial judge denied. Appellants then timely perfected this appeal.

## C. Issues on Appeal

Appellants raise two issues on appeal. In their first issue, they argue that the trial judge erred by granting summary judgment in RC's favor. In their second issue, they argue that the trial judge erred by denying their motion for new trial based on newly discovered evidence.

## II. ISSUE ONE: SUMMARY JUDGMENT

## A. Standard of Review

RC raised both traditional and no-evidence grounds in its summary-judgment motions.

We review a summary judgment de novo. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

When we review a traditional summary judgment in favor of a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's

claim or conclusively proved every element of an affirmative defense. *Alexander v. Wilmington Sav. Fund Soc'y, FSB*, 555 S.W.3d 297, 299 (Tex. App.—Dallas 2018, no pet.). We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Id.* A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id*.

We review a no-evidence summary judgment under the same legal-sufficiency standard as a directed verdict. *Merriman*, 407 S.W.3d at 248. We consider the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant that a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id*. The nonmovant bears the burden of producing summary-judgment evidence sufficient to raise a genuine issue of material fact as to each challenged element. *Id*.

## B.     The First Summary-Judgment Order

We first address appellants' attacks on the order granting RC's First MSJ. To recap, in that order the trial judge dismissed appellants' claims for negligent hiring, training, retention, and supervision; DTPA violations; and intentional infliction of emotional distress. The judge also ruled that appellants could not recover mental-anguish damages, emotional-distress damages, or exemplary damages.

### 1. Negligent Training

On appeal, appellants argue that the trial judge erred by granting summary judgment on their negligent-training claim. Appellants do not argue that the trial judge erred by dismissing their claims for negligent hiring, retention, and supervision, so we do not disturb the summary judgment as to those liability theories. *See Ontiveros v. Flores*, 218 S.W.3d 70, 71 (Tex. 2007) (per curiam).

RC sought summary judgment on appellants' negligent-training claim on four grounds: (1) RC owed appellants no duty to train Gomez because there was no evidence that Gomez was performing work she had not performed before; (2) there was no evidence that Gomez was an employee of RC; (3) there was no evidence that RC negligently trained Gomez; and (4) there was no evidence that RC's allegedly negligent training proximately caused appellants' damages.

On appeal, appellants contend that they adduced evidence that Gomez, the housekeeper who allegedly allowed Engler's suite to be burglarized, did not follow RC's security protocols and industry standards on the occasion in question. They further argue that this evidence gives rise to inferences that Gomez was inadequately trained and that appellants' damages were a foreseeable result of the inadequate training.

We conclude that appellants have not raised a genuine fact issue on the cause-in-fact component of the element of proximate cause. *See In re Molina*, 575 S.W.3d 76, 81 (Tex. App.—Dallas 2019, orig. proceeding [mand. denied]) ("Proximate

cause has two sub-elements—cause in fact and foreseeability."). Appellants bore the burden to adduce evidence from which a reasonable person could conclude that Engler's room would not have been burglarized if RC had trained Gomez to follow RC's protocols and industry standards while working in guests' rooms. But they cite no evidence, and we see none, raising a reasonable inference that Gomez would have acted any differently on the occasion in question if RC had trained her differently. Indeed, appellants' summary-judgment evidence included deposition testimony by Gomez to the effect that the Ritz-Carlton Dallas hotel taught her to require strangers encountered inside a room to go outside the room and use their own key card to open the door. It would be sheer speculation to conclude that appellants' damages would have been avoided if RC had given Gomez different training.

We overrule appellants' first issue with respect to their claims for negligent training.

### 2. DTPA Violations

Appellants alleged that RC was liable to appellants under various DTPA provisions for committing the following prohibited acts:

 (a) causing confusion or misunderstanding as to the source of the services; specifically the housekeeper services as set forth below:

. . . .

 (b) representing that services have characteristics, uses, and benefits which they did not have:

. . . .

(c)     representing that services are of a particular standard, quality, or grade, when they are of another:

. . . .

(d)     [f]ailing to disclose information concerning services known at the time of the transaction . . . to induce the Plaintiffs into a transaction they otherwise would not have entered had the information been disclosed.

*See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(2), (5), (7), (24). Appellants also alleged that RC was liable under the DTPA for unconscionable acts. *See id* § 17.50(a)(3). Each distinct DTPA allegation was followed by several sentences setting forth specific supporting facts.

RC's First MSJ raised several different grounds challenging appellants' five distinct DTPA theories described above.

On appeal, appellants' argument concerning their DTPA claims totals just over three pages. Therein they briefly and without citation to case law assert that RC's "numerous and detailed representations" were "false, misleading, deceptive, unconscionable, and producing causes" of their damages. Because appellants cite no authority to justify disrupting the trial court's conclusion on this matter we reject appellants' argument. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.) ("If we are not provided with existing legal authority that can be applied to the facts of the case, the brief fails.").

We overrule appellants' first issue with respect to their DTPA claims.

### 3. Intentional Infliction of Emotional Distress

RC's First MSJ raised no-evidence challenges to four elements of appellants' claims for intentional infliction of emotional distress. Specifically, RC argued that appellants had no evidence that (1) RC acted intentionally or recklessly; (2) RC's conduct was extreme and outrageous; (3) RC's conduct proximately caused appellants to suffer emotional distress; or (4) appellants' emotional distress was severe. *See Mattix-Hill v. Reck*, 923 S.W.2d 596, 597 (Tex. 1996) (per curiam) (reciting elements of intentional infliction of emotional distress).

On appeal, however, appellants do not address these no-evidence grounds. Rather, they argue that the trial judge erred in granting summary judgment on their intentional-infliction-of-emotional-distress claims because the trial judge later ruled that (1) Gomez was RC's borrowed employee and (2) appellants' claims sounded only in premises liability. RC argues, and we agree, that appellants have thus failed to address independent grounds on which the summary judgment could have been granted, namely the no-evidence grounds that RC raised in the First MSJ. Accordingly, we must overrule appellants' first issue with respect to their intentional-infliction-of-emotional-distress claims. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *see also Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 227–28 (Tex. 2022).

–11–

## 4.       Gross Negligence and Exemplary Damages

RC's First MSJ attacked appellants' claims for gross negligence and exemplary damages in four independent ways. First, RC argued that the claims for exemplary damages were barred under Texas Civil Practice and Remedies Code § 41.005(a) and that appellants had no evidence that any of the § 41.005(b) exceptions to the § 41.005(a) bar applied. Second, RC argued that appellants had no evidence to support three essential elements of their gross-negligence claims as predicates for recovering exemplary damages. Specifically, RC argued that appellants had no evidence (1) of the objective prong of the definition of gross negligence, i.e., an extreme degree of risk, (2) of the subjective prong of that definition, i.e., actual, subjective awareness and conscious indifference, or (3) that any gross negligence was committed by an RC vice principal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(3) (providing that gross negligence is a predicate for recovering exemplary damages); *id*. § 41.001(11) (defining gross negligence); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 922 (Tex. 1998) (holding that corporation can be liable for exemplary damages "if it commits gross negligence through the actions or inactions of a vice principal").

In their appellate brief, appellants argue that the summary judgment should be reversed because the record contains some evidence that RC was grossly negligent. Their argument fails for two reasons.

First, although appellants mention § 41.005 in passing, they present no argument as to why RC's independent ground based on § 41.005(a) was not a proper basis for summary judgment. This omission precludes us for reversing the dismissal of appellants' exemplary-damages claim. *See Rosetta Res. Operating*, 645 S.W.3d at 227–28.

Second, although appellants argue that Gomez ignored RC's security protocols with conscious indifference to appellants' rights, safety, and welfare, they present no argument that Gomez was an RC vice principal or that any RC vice principal acted with gross negligence relevant to the incident in question. *See* CIV. PRAC. & REM. § 41.001(11)(B) (defining gross negligence in part as "proceed[ing] with conscious indifference to the rights, safety, or welfare of others"). This omission also precludes reversal of the summary judgment as to appellants' claims for gross negligence and exemplary damages. *See Rosetta Res. Operating*, 645 S.W.3d at 227–28.

We overrule appellants' first issue with respect to their claims for gross negligence and exemplary damages.

### 5. Mental-Anguish Damages

Finally, RC obtained partial summary judgment that, under Texas law, appellants could not recover mental-anguish or emotional-distress damages under any of their causes of action. Appellants argue that the trial judge erred by granting summary judgment on this basis.

We need not address appellants' argument because we are affirming the take-nothing summary judgment on other grounds as to all of appellants' claims. This renders harmless any error in the trial judge's determination that appellants cannot recover mental-anguish or emotional-distress damages as a remedy for any of those claims. *See* TEX. R. APP. P. 44.1(a) (harmless-error rule in civil cases); *id.* 47.1 (opinion must address every issue "raised and necessary to final disposition of the appeal").

## C.      The Second Summary-Judgment Order

### 1.      Background

After the trial judge signed the first summary-judgment order in RC's favor, appellants still had claims pending against RC for general negligence, negligent undertaking, premises liability, and breach of contract. RC then filed the Second MSJ, in which it argued (1) appellants' claims sounded only in premises liability, and (2) appellants' premises-liability claims failed for various reasons.

The trial judge granted the Second MSJ in an order that specified the judge's reasons for doing so: (1) appellants' negligence and other claims were foreclosed because their claims were only premises-liability claims, and (2) appellants' premises-liability claims failed because the criminal conduct in question was not foreseeable to RC and thus RC owed appellants no legal duty. The trial judge therefore rendered final judgment that appellants take nothing from RC.

We note that appellants do not challenge the summary judgment on their negligent-undertaking claim, so we will not disturb the judgment as to that claim. *See Ontiveros v. Flores*, 218 S.W.3d 70, 71 (Tex. 2007) (per curiam).

### 2. General Negligence

Appellants argue that the trial court erred by concluding that they had failed to produce evidence supporting claims for general negligence as opposed to claims for premises liability. RC argues the opposite.

#### a. Applicable Law

Under Texas law, a person who claims to have been injured on another's property "may have either a negligence claim or a premises-liability claim against the property owner." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017). A claim sounds in negligence if the injury resulted from a contemporaneous, negligent activity on the property. *Id*. The claim sounds in premises liability if the injury resulted from the property's condition rather than an activity. *Id*. Negligence and premises-liability claims are thus separate and distinct theories of recovery requiring proof of different, though similar, elements. *Id*. Generally, the theories can be distinguished on the principle that "negligent activity" encompasses malfeasance theories based on affirmative, contemporaneous conduct by the owner that caused the injury, while "premises liability" encompasses nonfeasance theories based on the owner's failure to take measures to make the property safe. *Id*.

"A complaint that a landowner failed to provide adequate security against criminal conduct is ordinarily a premises liability claim." *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998) (footnote omitted). The proper categorization of the claim is generally determined by the malfeasance–nonfeasance distinction mentioned above. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (claims against bar for injuries sustained in bar brawl were premises-liability claims because they were primarily based on nonfeasance).

### b.    Application of the Law to the Facts

The parties dispute whether appellants' harm was caused by a contemporaneous negligent activity or by Gomez's nonfeasance. We agree with RC that this is a case of nonfeasance and therefore that appellants failed to demonstrate a viable negligence claim.

Appellants argue in their appellate brief that they were injured "because [Gomez] opened the locked wedding suite door and did not follow [RC's] protocol and industry standards." Specifically, Gomez failed to ask Omar Rimlawi to use his own key to open the door to the suite, which would have revealed that "he was likely a criminal and not a guest." Thus, the essence of appellants' negligence claim is Gomez's failure to take certain actions—her failure to require Rimlawi to prove that he had a key to the room according to RC protocols and industry standards. Thus, this is a nonfeasance case, and nonfeasance cases are typically premises-liability cases. *See United Scaffolding*, 537 S.W.3d at 471.

Appellants cite no cases that support their position that Gomez's conduct rises to the level of active malfeasance, and we have found none. The supreme court's *Del Lago Partners* opinion, however, supports our conclusion that this is a nonfeasance case. In that case, a bar patron sued the bar's owner for injuries the patron suffered during a brawl involving roughly twenty to forty men. *See Del Lago Partners*, 307 S.W.3d at 766. The case was tried and submitted to the jury as a premises-liability case rather than a negligent-activity case, and the supreme court concluded that was correct because the plaintiff complained primarily of the bar owner's nonfeasance in failing to intervene while the fight was brewing and failing to react promptly once it started. *Id*. at 776. This is analogous to the present case: appellants complain primarily that Gomez failed to act reasonably by following RC protocols once she discovered Rimlawi inside Engler's suite. Instead, according to Gomez's deposition testimony, she simply left the suite without requiring Rimlawi to produce a working room key and without telling any other RC personnel about her encounter with Rimlawi. This allegedly negligent conduct constitutes nonfeasance rather than malfeasance.

### c.    Conclusion

We conclude that the allegations and evidence in this case do not support appellants' contention that they have valid general-negligence claims against RC. Accordingly, we overrule appellant's first issue with respect to their general-negligence claims.

### 3. Premises Liability

The trial judge granted summary judgment on appellants' premises-liability claims specifically because (1) Rimlawi's criminal act was not foreseeable to RC and (2) RC therefore owed no legal duty to appellants. Appellants argue that the trial judge erred, contending that Rimlawi's criminal act was foreseeable both as a matter of common sense and because the evidence showed that there had been previous crimes in the area and within the hotel itself.

### a. Applicable Law

The *Timberwalk* case furnishes the controlling legal principles. As a general rule, a person has no legal duty to protect another from the criminal acts of a third person. 972 S.W.2d at 756. An exception to this rule is that a premises owner owes a duty of ordinary care to protect invitees from third-party criminal acts if the owner knows or has reason to know of an unreasonable and foreseeable risk of harm to invitees. *Id*.

One way to establish the foreseeability prong of the exception to the no-duty rule is through evidence of specific crimes on or near the premises. *Id*. In determining foreseeability under this approach,

> courts should consider whether any criminal conduct previously occurred on or near the property, how recently it occurred, how often it occurred, how similar the conduct was to the conduct on the property, and what publicity was given the occurrences to indicate that the landowner knew or should have known about them.

*Id*. at 757 (footnote omitted); *see also Park v. Exxon Mobil Corp.*, 429 S.W.3d 142, 145 (Tex. App.—Dallas 2014, pet. denied) (summarizing the "*Timberwalk* factors" as proximity, recency, frequency, similarity, and publicity).

### b.      Application of the Law to the Facts

We first address and reject appellants' contention that crime is so common that urban premises owners should automatically foresee the risk of certain criminal activity—namely thefts from unlocked premises. The *Timberwalk* court implicitly rejected this position, noting that crime can potentially occur at any time or place, especially in a large city, but nevertheless refusing to impose a duty of care universally on all premises owners. *See* 972 S.W.2d at 756. Appellants also point out that RC had specific policies in effect to prevent third parties from entering guests' rooms during room-service activities. The existence of such policies, however, also fails to establish foreseeability. *See Park*, 429 S.W.3d at 149 ("The mere act of taking preventative measures to protect against the possibility of future crime is not the same as foreseeing that criminal activity.").

Next we consider appellants' alternative contention that they adduced sufficient evidence of the *Timberwalk* factors to support imposing a duty on RC to protect invitees from third-party criminal acts.

Our review of this contention is hampered because the relevant argument section of appellants' brief contains no specific assertions about the kinds of crimes in the area that appellants supposedly proved and no record references. We do find

a discussion of "[e]vidence of crime in and around The Ritz-Carlton hotel" in appellants' statement of the facts, but those record references are solely to appellants' evidence filed in response to RC's First MSJ, which differs from their evidence filed in response to the relevant motion, RC's Second MSJ. For example, one lengthy quotation in this part of appellants' brief comes from a report by Richard Hudak that appellants did not attach to or reference in their response to the Second MSJ; accordingly, we will not consider that material. *See Carter v. City of Garland*, No. 05-16-00903-CV, 2017 WL 2118785, at *3 (Tex. App.—Dallas May 16, 2017, no pet.) (mem. op.) (evidence in court's file but neither incorporated by reference into summary-judgment response nor made the object of judicial notice was not properly before the trial court). The other quotations come from an expert report by Dr. Gary Deel. Although appellants did not attach that report to their response to RC's Second MSJ, they did attach Deel's declaration under penalty of perjury that includes essentially the same statements. We will consider those passages in Deel's declaration as though appellants had relied on them in their appellants' brief.[3] *See Horton v. Stovall*, 591 S.W.3d 567, 570 (Tex. 2019) (per curiam) ("[N]othing prevents courts from undertaking reasonable efforts to locate evidence described in a party's brief . . . .").

---

[3] We note that RC lodged objections to all these passages, the trial judge overruled the objections, and RC reurges its objections on appeal. Because we conclude that the passages do not raise a genuine issue of material fact, we need not consider RC's objections.

Deel said the following in his declaration:

Available data indicates that The Ritz-Carlton Dallas's location had a risk of property crime that was roughly six times (6x) higher than the surrounding state and county averages, and nearly (10x) higher than the national average. Specifically, the "CAP Index" report indicates that, for the year 2017, at 2121 McKinney Ave, Dallas, TX, the risk of larceny (theft) was more than ten times (10x) the national average.

. . . .

I ran a report using BestPlaces.net, which uses data from the FBI's Uniform Crime Reporting Program report from 2002, and it showed, for the area surrounding The Ritz-Carlton Dallas, that [the] property crime rate was approximately double that of the City of Dallas, Dallas County, the State of Texas, and the United States, and this was data from 2002.

I reviewed Dallas Police Calls for service, for three (3) years prior to the incident at issue in this lawsuit, for 2121 McKinney Ave, Dallas, TX, which is the address for The Ritz-Carlton Dallas. The Dallas Police Calls for service, during the aforementioned time period indicated that there were seventy-three (73) calls for service for crimes (alleged and/or actual), which averages to approximately three (3) per month. Out of the seventy-three (73) calls for service for crimes at [2]121 McKinney Ave, Dallas, TX, at least twenty-nine (29) calls were specifically for thefts and/or burglaries, which averages to approximately one per month.

The first paragraph quoted above suffers from several defects. It covers only the year 2017, and the incident made the basis of this lawsuit occurred on March 10, 2017. Thus, only a fraction of the data cited in that paragraph is relevant, and the paragraph does not distinguish between crimes that occurred before and after the relevant date. Nor does the paragraph give any absolute numbers about the crimes committed at the hotel's location. Because of this imprecision, the paragraph is not probative proof of either the recency or the frequency of crimes before the incident

in question. Additionally, the paragraph gives no details about the other crimes beyond the fact that they involved theft. The supreme court has made clear that the details of other allegedly similar crimes are important when assessing the foreseeability of a particular crime. *See Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 16 (Tex. 2008) (discounting the probative value of other violent crimes based on various dissimilarities from the murder involved in the particular case); *see also Timberwalk Apartments*, 972 S.W.2d at 756 (evidence must reveal "*specific* prior crimes on or near the premises" to establish foreseeability) (emphasis added). Here, the evidence gives no details about the other crimes at all, and it would be speculation to assume that they involved facts similar to the facts presented in the instant case. Finally, there is no evidence that any of the cited data for 2017 was publicized or known to RC in advance of March 10, and logically most of that data—the part covering the year after March 10—could not have been. In sum, the first paragraph is not probative evidence that the crime involved in this case was foreseeable.

We reject appellants' reliance on the second paragraph quoted above because it addresses crime rates in 2002—some 15 years before the incident made the basis of this lawsuit. This information is too remote from the relevant time period to show that the crime risk was foreseeable to RC. *See Trammell Crow*, 267 S.W.3d at 13 (considering crimes committed during the two years before the incident in question); *Park*, 429 S.W.3d at 146 (same). The paragraph also includes no information

suggesting any similarity between the crimes in the BestPlaces.net report and the crime involved in this case.

Finally, the third paragraph quoted above also falls short of raising a genuine fact issue on foreseeability. It does not adequately prove the recency of the other crimes mentioned therein; it covers a three-year time period, and it does not specify when during that period the other crimes occurred. It also does not prove the frequency of the other crimes because the paragraph actually describes the number of police calls for "alleged and/or actual" crimes, not the number of actual crimes that occurred. That is, the paragraph leaves us to speculate how many of the police calls involved actual crimes as opposed to false or mistaken reports. Finally, the paragraph does not give any details about the police calls arising from alleged "thefts and/or burglaries" to show that those incidents were similar to the incident made the basis of this suit. The umbrella terms "theft" and "burglary" could involve crimes (such as pickpocketing, vehicle break-ins, and thefts by hotel guests or employees) quite dissimilar from the room burglary involved in this case. Without any details showing recency, frequency, and similarity, the third paragraph quoted above fails to raise a genuine fact issue as to the foreseeability of the crime at the heart of this lawsuit.

### c.    Conclusion

We overrule appellants' first issue as to their premises-liability claims.

## 4.    Breach of contract

Appellants alleged that RC breached a contract with them in several ways. Although neither of RC's summary-judgment motions expressly addressed appellants' breach-of-contract claims, its Second MSJ sought judgment on all remaining claims, which included breach of contract, on the theory that premises liability was the only legal theory potentially available to appellants on the facts of the case.

On appeal, appellants make two arguments regarding their breach-of-contract claims. First, they argue that we should reverse if we conclude "that premises liability law does not apply to this case." We have concluded that premises-liability law does apply to this case, so we reject this argument.

Second, appellants argue that their breach-of-contract claims should not be foreclosed even if premises-liability law properly applies to this case. In support, appellants recite the elements of a breach-of-contract claim under Texas law, with two case citations, and assert that "the trial court did not grant summary judgment as to the evidence establishing those elements." They continue, "Thus, the question of whether there exists evidence to establish the elements of breach of contract is independent of the question of whether a premises liability claim exists or not." Then they conclude, "In short, no matter what this Court rules on any other aspect of this case, the trial court's grant of summary judgment as to [appellants'] breach of contract claim[s] should be reversed."

We conclude that appellants' second argument is waived for inadequate briefing. As discussed above, some fact patterns require a claimant to proceed under premises-liability law instead of general negligence principles. *See, e.g.*, *United Scaffolding*, 537 S.W.3d at 480–81. RC's Second MSJ implicitly asserted that this rule also applies to breach-of-contract claims. Appellants seem to posit that the rule should not apply to breach-of-contract claims because such claims have different elements from premises-liability claims, but the same is true for general-negligence claims. *See id*. at 471 (noting that elements of premises liability and negligence are similar but different). Appellants cite no legal authority to support the premise that a claimant can assert a breach-of-contract claim based on facts that would support a premises-liability claim. Accordingly, the argument has been forfeited. *See* TEX. R. APP. P. 38.1(i) (argument in appellant's brief must be supported "with appropriate citations to authorities"); *Bolling*, 315 S.W.3d at 895 ("[W]e are not responsible for doing the legal research that might support a party's contentions.").

Accordingly, we overrule appellants' first issue as to their breach-of-contract claims.

### III.   ISSUE TWO: MOTION FOR NEW TRIAL

In their second issue on appeal, appellants argue that the trial judge abused her discretion by denying their motion to new trial. Specifically, they argue that they proved their entitlement to a new trial based on newly discovered evidence. We conclude that appellants have not shown an abuse of discretion.

Appellants were required to show (1) evidence came to their knowledge after the trial (or summary judgment, as the case may be); (2) it was not owing to the want of due diligence that the knowledge of the evidence did not come sooner; (3) the new evidence was not cumulative; and (4) the new evidence was so material it would probably produce a different result if a new trial were granted. *See Johnson v. Legacy Bank of Tex.*, 167 S.W.3d 643, 645–46 (Tex. App.—Dallas 2005, no pet.). We review the trial judge's ruling for abuse of discretion. *See id*. at 646.

In the argument section of their brief, appellants do not cite or otherwise identify any specific "newly discovered evidence" that would have produced a different result had it been available for use on summary judgment. But in the statement-of-facts section of their brief, appellants specifically cite some of the allegedly newly discovered evidence—specifically, the deposition of Lester Washington, a former Marriott security area director—for the premise that RC specifically used the CAP Index to determine the security needs for RC properties in Dallas. We therefore consider this citation in our analysis of appellants' second issue.

We conclude that the trial judge did not abuse her discretion by refusing to grant appellants' new-trial motion based on Washington's testimony about the CAP Index. Appellants are correct that Washington testified that Marriott International considered, among other things, third-party crime information called the CAP Index when it decided what security staffing should be provided at a particular hotel

–26–

location, including the Ritz-Carlton Dallas hotel. But appellants do not explain how this evidence would have led to a different outcome in the summary-judgment proceedings that resolved this case, and the trial judge could reasonably conclude that it would not have done so. As discussed above, appellants' premises-liability evidence failed to raise a genuine fact issue on the essential element of duty because that evidence did not demonstrate that similar crimes had occurred in the same locale with enough frequency and recency to impose a duty on RC. This allegedly newly discovered evidence showing that the CAP Index was part of the information Marriott used to demonstrate security-personnel needs at the Ritz-Carlton Dallas— but not what the CAP Index actually showed about the frequency of similar, recent crimes in the relevant location—does not change that conclusion.

Thus, appellants have not shown that the trial judge acted arbitrarily or unreasonably by denying appellants' motion for new trial based on newly discovered evidence. Accordingly, we overrule appellants' second issue on appeal.

## IV. DISPOSITION

The trial court's judgment is affirmed.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

220067F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

JEANETTE ENGLER AND
RICHARD LICHDEAN, Appellants

No. 05-22-00067-CV     V.

THE RITZ-CARLTON HOTEL
COMPANY, Appellee

On Appeal from the 192nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-17624.
Opinion delivered by Justice Garcia.
Justices Carlyle and Rosenberg
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee THE RITZ-CARLTON HOTEL COMPANY recover its costs of this appeal from appellants JEANETTE ENGLER and RICHARD LICHDEAN.

Judgment entered this 28th day of April 2023.