

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00251-CV

_____

XNA CORP. D/B/A SUPER 8 BY WYNDHAM, APPELLANT

V.

ARMANI WILLIAMS, APPELLEE

On Appeal from the County Court at Law No. 3
Lubbock County, Texas
Trial Court No. 2020-576,575, Honorable Benjamin A. Webb, Presiding

July 3, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, XNA Corp. d/b/a Super 8 by Wyndham ("XNA"), appeals from a jury award, which includes exemplary damages, for allowing a thief to enter the hotel room of Appellee, Armani Williams. XNA raises the following issues: (1) Williams's case sounded in premises liability only and a finding of negligence by the jury was improper; (2) XNA's identification of an unidentified responsible third party precluded the award of exemplary damages; (3) the trial court erred by submitting the question of exemplary damages to

the jury; (4) the jury's exemplary damages award was excessive; and (5) the trial court erred in excluding XNA's police officer witness. We conditionally affirm.

## BACKGROUND

In January 2020, Armani Williams checked into the Super 8 at 501 Avenue Q, in Lubbock, Texas. At some point, Williams left his room to have dinner with friends. He left the majority of his belongings in the room, including a fanny pack with $10,000 in cash, and valuable electronic equipment.[1] While Williams was at dinner, a "glitch" occurred in the hotel's computer system which prevented the hotel staff from viewing what rooms were already occupied. Despite there being a paper backup system containing Williams's information and room number, a staff member, aware of the "glitch" and without consulting the paper backup, checked an arriving guest into Williams's room. The staff member also neglected to check the guest's identification, and she did not write down his name or any other information to identify him. The guest, after going to Williams's room, returned to the front desk and told the staff member the room was already occupied. She then gave the guest a new key to a new room.

When Williams returned from dinner, he found his room ransacked and the cash and the electronic equipment missing. Williams went to the front desk to report the incident, but the hotel staff refused to divulge the identity of the other guest. Williams called the Lubbock Police, and an investigator came to the scene. Hotel staff did not reveal the identity of the other guest to the investigator, and he was unable to locate the

---

[1] Williams was in the process of moving between apartments and brought his most valued possessions with him to the hotel.

2

guest or locate Williams's belongings. Williams then sued XNA for negligence based on its granting access to his room to the unknown guest.

At trial, a jury awarded Williams the value of his stolen possessions in the amount of $11,900, and exemplary damages in the amount of $75,000. This appeal followed.

## ANALYSIS

### ISSUE ONE—NATURE OF THE NEGLIGENCE CLAIM

XNA's first issue argues Williams's negligence claim was in fact a premises liability claim, and Williams's failure to submit a question on premises liability was fatal to his recovery. Williams argues the issuance of a key to his room to a stranger is a negligent activity, and therefore submission of a premises liability question to the jury was improper. We agree with Williams.

Whether the condition that allegedly caused the plaintiff's injury is a premises defect is a legal question, which we review de novo. *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 469 (Tex. 2017) (citations omitted). In a negligent-activity case, a property owner or occupier must "do what a person of ordinary prudence in the same or similar circumstances would have . . . done," whereas a property owner or occupier in a premises liability case must "use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier [of land] knows about or in the exercise of ordinary care should know about." *Levine*, 537 S.W.3d at 471 (quoting *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998)). When distinguishing between a negligent activity and a premises defect, the focus is on whether the injury occurred by or as a contemporaneous result of the activity

3

itself—a negligent activity—or rather by a condition created by the activity—a premises defect. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 (Tex. 2016).

The gravamen of Williams's claim is XNA's employee negligently issued a key to his room to a stranger, which allowed the stranger to rob him. Williams does not complain about the condition of the premises—he is not asserting the security on the premises was inadequate or there was some defect with the door to his room which permitted access to the wrong person. The only complaint is the access was given to the wrong person, which access was controlled exclusively by XNA.

Nonetheless, XNA claims Texas Law requires the submission of all claims dealing with inadequate security as premises liability cases. For this proposition, it cites *Timberwalk Apartments,* 972 S.W.2d at 749, and *Del Lago Partners v. Smith*, 307 S.W.3d 762 (Tex. 2010). In *Timberwalk*, the Texas Supreme Court declared "[a] complaint that a landowner failed to provide adequate security against criminal conduct is ordinarily a premises liability claim." *Timberwalk Apartments*, 972 S.W.2d at 753. *Timberwalk* involved a rape which occurred because an apartment complex did not provide devices to secure the sliding backdoor to the apartment's balconies. Unlike *Timberwalk*, Williams's complaint is not regarding the adequacy of security devices provided by XNA, but rather the granting of access to his room. *Timberwalk* is inapposite.

*Del Lago* involved a premises liability claim arising out of injuries sustained during a bar brawl at closing time. The fight broke out after "ninety minutes of heated altercations among intoxicated patrons," and the question of premises liability was properly submitted to the jury because it was foreseeable a violent altercation between the bar patrons was

4

imminent. *Id.* at 767–69. The bar had "actual or constructive knowledge of any condition on the premises that poses an unreasonable risk of harm to invitees," and it had "a duty to take whatever action is reasonably prudent to reduce or eliminate that risk." *Id.* at 769 (quoting *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983)) (internal quotations omitted). Again, unlike the security complaint in *Del Lago*, Williams is not complaining there was inadequate security to prevent the damages he suffered: he is complaining the employee's negligent act, which did not affect any condition of the premises, is the cause of his damages.[2]

XNA next argues, even if a security-related claim is not per se required to be submitted as a premises liability claim, the issuance of the room key to the wrong person was a form of "nonfeasance" and not a negligent activity. For support, XNA points to a recent decision of our sister court. In *Engler v. Ritz-Carlton Hotel Co.*, during the performance of room cleaning services, hotel staff opened the door to a wedding party's suite and left it unattended, and a stranger slipped into the suite. No. 05-22-00067-CV, 2023 Tex. App. LEXIS 2856, at *2 (Tex. App.—Dallas Apr. 28, 2023, no pet.) (mem. op.). Upon returning to the room, the staff found the stranger in the suite, but failed to ask him to use his room key to prove he belonged there. *Id.* at *16–17. After the cleaning staff departed, the stranger burglarized the wedding suite, stealing the jewelry, gifts, and other items intended for the wedding. *Id.* at *2–3. The wedding couple filed suit against the hotel based upon theories of negligence and premises liability, and the trial court granted a summary judgment in favor of the hotel dismissing their lawsuit. *Id.* at *3–6. Affirming

---

[2] Although the *Del Lago* Court deemed it appropriate to submit the question of negligence of the bar owner as a premises liability question, it also pointed out the claim could have been submitted successfully as a negligence question. *Id.* at 772.

5

the lower court's summary judgment, the Dallas Court of Appeals concluded, among other things, the couple was unable to maintain their negligence claims because the staff's failure to request the burglar to use his keycard was a form of "nonfeasance" as opposed to active "malfeasance" and did not constitute a negligent activity. *Id.* at *17.[3]

The instant case is factually distinct from *Engler*. Unlike the hotel staff in *Engler*, XNA's employee did not merely open the door to Williams's room during some routine maintenance and allowed a stranger to access the room; the employee's affirmative act was the sole reason the thief gained access to the room in the first place. But for the erroneous issuance of the keycard to the wrong person, Williams's room would not have been burglarized.[4]

Williams's claim was properly submitted to the jury under a negligent activity theory. We overrule XNA's first issue.

ISSUE TWO—EXEMPTION FOR EXEMPLARY DAMAGES UNDER § 41.005

For its second issue, XNA complains exemplary damages were precluded under the Texas Civil Practice & Remedies Code because Williams's harm resulted from the criminal act of a third-party. TEX. CIV. PRAC. & REM. CODE ANN. § 41.005. To preserve an issue for appellate review, the record must demonstrate the complaint was first made to the trial court by a timely request, objection, or motion with sufficient specificity to make

---

[3] Although the *Engler* Court determined the hotel staff's failure to require the burglar to use his room key was a form of "nonfeasance," the affirmative act of opening the room and leaving it unattended to permit a burglar to enter is arguably a form of "malfeasance."

[4] *See also Travis v. Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) ("Although the criminal conduct of a third party may be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of such negligence.").

6

the trial court aware of the complaint. TEX. R. APP. P. 33.1; *cf. Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 278–80 (Tex. 1999) (raising statutory exemption for exemplary damages in response to motion for judgment on the verdict sufficient to preserve error).

The record does not demonstrate XNA at any time made the trial court aware the exemplary damages were not permitted under section 41.005, and it failed to preserve the issue for appeal. XNA's second issue is overruled.

**ISSUE THREE—SUFFICIENCY OF THE EVIDENCE FOR EXEMPLARY DAMAGES**

By its third issue, XNA complains there was legally insufficient evidence for the jury to find XNA committed gross negligence as a prerequisite to Williams's exemplary damages award.[5] Because Williams failed to prove "extreme degree of risk," XNA argues, he was not entitled to receive exemplary damages.[6]

In reviewing a verdict for legal sufficiency, we "must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Medina v. Zuniga*, 593 S.W.3d 238, 247 (Tex. 2019) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005)). "[I]n reviewing the legal sufficiency of evidence to support a finding that must be proved by clear and convincing evidence, an appellate court must 'look at all the

---

[5] Although XNA identified the issue as "[Williams] failed to prove foreseeability," the issue was not briefed. Issues unbriefed are waived. TEX. R. APP. P. 38.1(i); *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 215 (Tex. 2020).

[6] The jury found unanimously that XNA committed gross negligence, which is required before exemplary damages can be assessed. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003.

evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 866 (Tex. 2017) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 609 (Tex. 2004)). Before the jury could assess exemplary damages, Williams had to prove by clear and convincing evidence the harm he suffered was caused by XNA's gross negligence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a).

The term "gross negligence," for purposes of assessing exemplary damages, is defined by statute:

> "Gross negligence" means an act or omission:
>
> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

§ 41.001(11).

"Gross negligence has both an objective and a subjective component." *Zuniga*, 593 S.W.3d at 247 (quoting *Reeder v. Wood Cty. Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2012)). First, "viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Id.* (quoting *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001)). Second, "the actor must have actual,

8

subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Id.*

XNA only attacks the sufficiency of the evidence regarding the objective component of "gross negligence." Under the objective element an extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Id.* (quoting *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)). XNA argues Williams did not provide sufficient evidence its negligent act "involves an extreme degree of risk" because the evidence of crimes reported at the property was not detailed enough. XNA cites *Timberwalk Apartments* for the proposition the proffered evidence is not specific enough to prove the Super 8 hotel was prone to criminal activity. 972 S.W.2d 749 (Tex. 1998). However, *Timberwalk* examined the question of whether a landlord owed a *duty* to the plaintiff under a premises liability theory.[7] As discussed above, the instant case involves a negligence claim based on an affirmative act—the granting of access to a room occupied by Williams—versus the passive condition of a premises under a premises liability theory, e.g., a lack of locks on doors leading to a burglary. While foreseeability is an element of a premises liability claim, it is not part of the statutory definition of "gross negligence," and the standard of foreseeability is not the same as the "extreme degree of risk, considering the probability and magnitude of the potential harm to others."[8] Whereas "foreseeability" concerns the

---

[7] The *Timberwalk* Court concluded: (1) the premises liability was the correct theory under which the claim should have been tried because the issue was the lack of proper security measures on the premises; and (2) the plaintiff had to demonstrate there was a general condition of lack of safety, using specific instances of crime, which demonstrates the criminal act suffered was foreseeable. *Id.*

[8] When construing statutes, we endeavor to determine and give effect to the Legislature's intent. *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 183 (Tex. 2022) (citations and internal quotations omitted). We must enforce the statute as written and refrain from rewriting the text that lawmakers chose. *Id.*

likelihood of crime occurring on the premises, "extreme degree of risk" weighs both the probability crime can occur as well as the potential severity of the crimes. *Zuniga*, 593 S.W.3d at 247.

Applying the language of the statute, objectively, from the standpoint of the negligent employee, giving access to a guest's room without permission to a stranger involves an extreme degree of risk to the guest's safety and property. The investigating officer testified to the harms which could befall a guest if access is granted to an unauthorized person, which includes theft and assault. He also testified he had responded to several calls from the same hotel for reported criminal activity, contradicting the hotel owner and staff member's testimony there was no crime at the hotel. The Lubbock Police Department's records clerk testified the Super 8 was the subject of over 450 calls reporting crimes over the preceding thirteen-year period, the equivalent of one call every ten days.

XNA points out the particular details of each of the calls to police was not borne out in testimony at trial and suggests the jury could not determine if the Super 8 is in a "high crime area." However, the Lubbock Police Department records custodian did testify, without objection, to the categories of criminal activity reported in the calls coming from the Super 8, which included:

- burglary;
- assault;
- theft;
- sex offenders;

- persons losing consciousness;

- attempted crimes;

- intoxicated individuals;

- vehicle burglary;

- possession of narcotics and drugs; and

- a dead body.

But whether the evidence qualifies the hotel as being in a "high crime area," however, is beside the point: objectively, the chances of harm befalling a guest by granting access to a stranger were more than a remote possibility. The jury could have inferred, based on the frequency and volume of reports of crime to police, the Super 8 was prone to criminal activity. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 520 (Tex. 1997); *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex. 1973); *accord McDaniel v. Johnson*, No. 07-20-00096-CV, 2020 Tex. App. LEXIS 10477, at *10 (Tex. App.—Amarillo Dec. 31, 2020, no pet.) (mem. op.). Certainly, if the Super 8 was the site of a degree of criminal activity serious enough to warrant a call to the police, giving access to a guest's room to an unauthorized stranger involves an extreme degree of risk of substantial harm to a guest. Williams's own experience bears this out.

The jury could have also inferred the staff member had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference. Despite her insistence the hotel experienced no crimes whatsoever, her testimony was directly contradicted by the Lubbock Police Department. She also testified she was familiar with downtown Lubbock, and her family has owned and operated the hotel for

11

over twenty years. She further testified the "glitch" was not an isolated incident, she had encountered it numerous times, and she was familiar with the hotel policy on checking paper backups when the information was not available electronically. Though her explanation was she was familiar with the guest who she gave access to Williams's room, she admitted she disregarded the hotel's policies and procedures by failing to check the paper backup files first. The evidence taken together was sufficient for the jury to infer the staff member had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference for the consequences to Williams. Based on the evidence, a reasonable trier of fact could form a firm belief or conviction of both the objective and subjective components of gross negligence in favor of Williams.

Viewing the evidence in the light most favorable to the verdict, the jury received sufficient evidence to find by clear and convincing evidence XNA committed "gross negligence" as defined by statute. XNA's third issue is overruled.

**ISSUE FOUR—EXCESSIVENESS OF THE EXEMPLARY DAMAGES AWARD**

XNA's fourth issue concerns the amount of exemplary damages awarded by the jury. While the compensatory damages awarded were $11,900, the jury sought to punish XNA by awarding exemplary damages in the amount of $75,000, over six times larger than the compensatory damages. XNA argues the exemplary damage award is unconstitutional because it is over four times the amount of the compensatory damages.

Williams argues the exemplary damages should be permitted because they are within the statutory limits. TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b). Williams also argues there is no "mathematical bright line" about whether the ratio of exemplary

12

damages to compensatory damages is constitutionally excessive. *Bmw of N. Am. v. Gore*, 517 U.S. 559, 562 (1996); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 308 (Tex. 2006) (guideposts in determining constitutionally acceptable exemplary award include: "(1) the nature of the defendant's conduct, (2) the ratio between exemplary and compensatory damages, and (3) the size of civil penalties in comparable cases."). He also cites the following cases from our sister courts which have found ratios higher than four times compensatory damages to be constitutional:

- an 11:3 ratio was approved by *Riedell v. Hoffman Controls Corp.*, No. 05-00-00658-CV, 2001 Tex. App. LEXIS 4930, at *5–14 (Tex. App.—Dallas July 25, 2001, no pet.) (mem. op.);

- a 5:1 ratio was approved by *Huynh v. Phung*, No. 01-04-00267-CV, 2007 Tex. App. LEXIS 1195, at *25–48 (Tex. App.—Houston [1st Dist.] Feb. 16, 2007, no pet.) (mem. op.); and

- a 5:1 ratio was approved by *Shumate v. Berry Contracting, L.P.*, No. 13-19-00382-CV, 2021 Tex. App. LEXIS 5648, at *17–23 (Tex. App.—Corpus Christi July 15, 2021) (mem. op.), *rev'd on other grounds*, No. 21-0955, 2024 Tex. LEXIS 298, at *1 (Tex. Apr. 26, 2024).

We note all of the above cases are persuasive authority, and we are not bound by these decisions. Nonetheless, we consider each in turn. *Riedell* involved a suit by an employer against its former employee for malfeasance, fraud, and breach of fiduciary duty. The defendant, a salesman, submitted fraudulent expense reports, made business trips at his employer's expense but did not meet with anyone, deleted customer information from his computer, harassed his employer after his resignation by making over a hundred calls and hanging up, and refused to take steps necessary to obtain credits or vouchers for unused airline tickets. *Riedell*, 2001 Tex. App. LEXIS 4930, at *9. He also filed numerous false reports with government agencies, including the EPA, OSHA, and IRS, which cost

his employer more than $30,000 to defend. *Id.* at *8. The Dallas Court of Appeals concluded the jury had sufficient evidence to find the defendant repeatedly engaged in actions based upon his personal animosity towards his employer, which resulted in the exemplary award of eleven times the amount of compensatory damages. *Id.* at *11.

In *Phung*, the two defendants represented to the plaintiff if she invested $20,000 with them they would buy a shrimp dock business for $800,000 and then sell within three months for $1,000,000. *Phung*, 2007 Tex. App. LEXIS 1195, at *1–3. As a condition of her investment, the plaintiff negotiated for the return of her money within three months and 10% of the profit from the sale of the dock. *Id.* The parties executed a promissory note. After the three months expired, the plaintiff requested the return of her money several times, but the defendants refused. *Id.* At one point, before the suit was filed, the defendants paid back only the initial investment with a check, but the checking account had insufficient funds. At trial, the defendants presented to the jury a copy of the note with comments which claimed to relieve one of them of liability and show the money was merely a loan; the plaintiff, however, presented an authenticated original copy of the promissory note which did not contain the additional comments. *Id.* at *37–38. The jury found the behavior of the defendants so reprehensible they awarded exemplary damages in the amount of $2,500,000, which was over one hundred times the amount of compensatory damages. In upholding some exemplary award, the Houston Court of Appeals concluded there was sufficient evidence for the jury to have determined the defendants' actions in consciously concealing the nature of the agreement were calculated. *Id.* at *36. However, the court reduced the amount to $100,000 based on the *Chapa* guideposts. *Id.* at *4, 46–47.

14

*Shumate* involved a dispute between an individually owned trucking company and a construction company. *Shumate*, 2021 Tex. App. LEXIS 5648, at *2–9. The trucking company conspired with employees of the construction company to use the construction company's resources and materials for various jobs without compensating the construction company. *Id.* A thorough investigation by the construction company revealed several projects for which its resources were used, but no contract or compensation was tied to the use of the resources. *Id.* After trial, a jury awarded the construction company nearly $1 million in compensatory damages and nearly $5 million in exemplary damages. *Id.* The Corpus Christi Court of Appeals upheld the exemplary damages because the "[t]he evidence establishe[d] that [the defendant] engaged in a years' long scheme of misappropriating [the plaintiff's] materials and services" and "[the defendant's] actions, as found by the jury, were clearly the result of intentional trickery or deceit as opposed to accidental behavior." *Id.* at *19–20.

The Texas Supreme Court has viewed exemplary damages in excess of four times compensatory damages with skepticism and remarked "ratios of more than four times compensatory damages might be close to the line of Constitutional propriety." *See Tony Gullo Motors I, L.P.*, 212 S.W.3d at 308 (finding 4.33:1 ratio of damages to be unconstitutional); *Bennett v. Reynolds*, 315 S.W.3d 867, 878 (Tex. 2010). The Supreme Court has commented ratios greater than 4:1 "may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages." *Bennett*, 315 S.W.3d at 879 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)). The cases from our sister courts either involved a significant amount of financial damage to the plaintiff, reprehensible conduct in the form of lying,

15

cheating, and stealing, or both.  The above cases, as opposed to the case at bar, involved *intentional* conduct of the defendant parties causing damages, rather than grossly negligent conduct.  In each instance, the defendant's goal was to cause the harm suffered by the plaintiff.  Such behaviors are necessarily "egregious acts" and the ratios exceeding 4:1 in these cases may fall within the exception established by our high court.

By contrast, this case involved a hotel staff member who did not intend to harm Williams.  Although her failure to follow protocol created an extreme risk of substantial harm to Williams, the robbery of Williams's possessions was not her aim.  While the staff member and hotel owner committed arguably reprehensible acts by failing to fully cooperate with the investigation and then each misrepresenting the susceptibility of the Super 8 to criminal activity, these actions occurred *after* the robbery had already occurred and did not play a part in the robbery *itself*.  The conduct of XNA's owner and employee after the robbery, though reprehensible enough for the jury to punish XNA, was not the cause of the damages to Williams.  We cannot say the gross negligence by the hotel staff member was an egregious act when compared to the cases cited by Williams.

Without an egregious act, this Court's stare decisis compels us to hold the exemplary damages award in excess of four times the economic damages awarded was unconstitutional.  *Apache Corp. v. Moore*, 960 S.W.2d 746, 750 (Tex. App.—Amarillo 1997); *followed by Harris v. Archer*, 134 S.W.3d 411, 438–40 (Tex. App.—Amarillo 2004, pet. denied) (considering the Legislature's caps on exemplary damages, more than four times is excessive unless the injury is particularly egregious and difficult to detect or

16

compensate).[9]  Accordingly, the maximum exemplary damages awarded could only be up to $47,600.  We make a suggestion of remittitur, and should Williams not remit $27,400 of the $75,000 exemplary damages awarded within twenty days of the issuance of this opinion, we will reverse the trial court's judgment and remand for new trial.  TEX. R. APP. P. 46.3; *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex. 2007).  *See also* TEX. R. APP. P. 44.1(b) ("The court may not order a separate trial solely on unliquidated damages if liability is contested.").

## ISSUE FIVE—EXCLUSION OF WITNESS TESTIMONY

In its issue number five, XNA complains about the exclusion of testimony from one of its witnesses.  The investigating officer who responded to Williams's report of the theft of his belongings was prohibited from testifying regarding his suspicion, based upon the large amount of cash missing and an alleged odor of marijuana he detected in Williams's room at the time, the motivation for the burglary may have been "a drug deal gone wrong."

A trial court's exclusion of evidence is reviewed for abuse of discretion.  *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836 (Tex. 2018).  Generally, drug usage, without further evidence of negligence, is inadmissible.  *Bedford v. Moore*, 166 S.W.3d 454, 465 (Tex. App.—Fort Worth 2005, no pet.) (citing *Trans-State Pavers, Inc. v. Haynes*, 808 S.W.2d 727, 729 (Tex. App.—Beaumont 1991, writ denied); *Dorman v. Langlinais*, 592 S.W.2d 650, 652 (Tex. App.—Beaumont 1979, no writ)).

---

[9] *See also Mitschke v. Borromeo*, 645 S.W.3d 251, 256–57 (Tex. 2022) (three-judge panels must follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision).

Here, when cross-examined outside the presence of the jury, the investigating officer stated he did not have any evidence to confirm his suspicion of a "drug deal gone bad" and he did not believe Williams had used marijuana. He also believed Williams was truthful regarding the items missing from his room. A mere surmise or suspicion is not relevant evidence, and the prejudice created by such testimony far outweighs its probative value. TEX. R. EVID. 402, 403; *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012).

The trial court did not abuse its discretion in excluding the testimony concerning marijuana in the hotel room. We overrule XNA's fifth issue.

## CONCLUSION

The trial court's judgment is affirmed on the condition Williams timely files a remittitur of $27,400 of the $75,000 exemplary damages award within twenty days of the issuance of this opinion; otherwise, we reverse and remand the matter for a new trial.

Alex Yarbrough
Justice

18